501 A.2d 87

**John L. YINGLING**

v.

**Joseph PHILLIPS, et al.**

**No. 287, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 6, 1985.

Robert C. Verderaime (Verderaime & DuBois, P.A. on brief), Baltimore, for appellant.

Daniel Karp (Allen, Thieblot & Alexander on brief), Baltimore, for appellee, MAIF.

Timothy E. Fizer (A. Douglas Owens on brief), Baltimore, for appellee, GEICO.

George M. Church (Whiteford, Taylor, Preston, Trimble & Johnston on brief), Baltimore, for appellees, Phillips and Prudential Property & Cas. Ins. Co.

Argued before GARRITY, ADKINS, and KARWACKI, JJ.

ADKINS, Judge.

Before us is the question of when the statute of limitations begins to run against a personal injury plaintiff who asserts claims that various insurers have uninsured motorist coverage with respect to the accident that caused his injuries. The question is not free from difficulty. As one commentator has put it, "[t]here is no clear basis for stating when a statute of limitations begins to run in regard to uninsured motorist claims." 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance*, § 7.12 (2d ed. 1985).

The personal injury plaintiff is appellant, John L. Yingling (Yingling). On December 17, 1978, Yingling was operating a vehicle owned by appellee Joseph Phillips (Phillips) and insured by appellee Prudential Property and Casualty Insurance Company (Prudential). Yingling did not own a motor vehicle, did not reside with any relative who owned one, and did not own any automobile liability insurance. Two tires on the Phillips vehicle went flat and Yingling pulled to the shoulder of the road to change them. A vehicle operated by Thomas Wood, owned by appellee Mary Wood (Wood), and insured by appellee Government Employees Insurance Company (GEICO) pulled off behind the Yingling-Phillips vehicle to assist in the operation. A vehicle operated by Linda Miller (Miller) and owned by National Car Rental Systems, Inc. (National) struck Yingling. National's insurer was Travelers Insurance Company (Travelers).

On May 2, 1979, Yingling filed suit against Miller and National. National obtained summary judgment in its favor because on the date of the accident Miller was not the lessee of its vehicle and did not have permission to use it. Although that judgment was made final under former Md. Rule 605 a, no appeal was taken from it. This raised a question as to Miller's status as an uninsured motorist. In an apparent effort to resolve this and other problems, Prudential and Phillips on September 5, 1980, filed a declaratory judgment action against Yingling, National, Travel-

ers, Miller, and appellee Maryland Automobile Insurance Fund (MAIF), to which GEICO was added on March 19, 1981. The action sought, *inter alia*, declarations that (1) Yingling was not an insured under Prudential's policy and, therefore, not entitled to coverage under the uninsured motorist coverage of that policy; (2) Miller was covered by the Travelers' policy; or in the alternative, (3) Yingling was entitled to uninsured motorist coverage under the GEICO policy; or, in the still further alternative, (4) that MAIF was liable. Yingling, MAIF, and GEICO answered this suit. National's and Travelers' motions raising preliminary objection were granted and the action was dismissed as to them, via a judgment made final under Md.Rule 605 a. Again, no appeal was taken. On March 4, 1982, after various motions for summary judgment had been filed but not decided, Prudential and Phillips dismissed the declaratory judgment action without prejudice. Former Md. Rule 541 a.1.

We now return to the tort action of *Yingling v. Miller*. In that case Yingling obtained a $99,240.15 judgment against Miller on June 8, 1983. None of the appellees appeared to defend the action. A little over a year later—on July 25, 1984—Yingling brought the action that is the subject of this appeal. He sued Phillips, Prudential, National, Travelers, Miller, Wood, GEICO, and MAIF in the Circuit Court for Baltimore City asserting that there was a dispute among the several insurers as to which of them was liable for coverage to Miller or Yingling and as to which was liable to pay his judgment against Miller. He alleged that all the insurers had refused to defend Miller and that each had refused to pay any part of his judgment against her. He sought declarations that Miller was covered by Travelers' policy or that Miller was uninsured (with consequent responsibility on MAIF). He also asked the court to declare that he was covered either by the GEICO or Prudential policies or both.

A plethora of responses followed. National and Travelers moved to dismiss on the ground, *inter alia*, that the judgment in favor of National in *Yingling v. Miller* and the

judgments in favor of both in the first declaratory judgment action were *res judicata.* The court granted those motions. No question of the propriety of that action is raised on appeal.

MAIF, Wood, and GEICO all moved to dismiss on the ground that Yingling's declaratory judgment action was barred by the three-year statute of limitations contained in Maryland Code, Courts and Jud. Proceedings Art., § 5–101. By their reckoning Yingling's cause of action relative to insurance coverage accrued on September 5, 1980, when Prudential and Phillips filed the first declaratory judgment suit because it was then that Yingling was made aware that all the insurers had denied or probably would deny coverage. Thus, according to them, Yingling's July 25, 1984, declaratory judgment action was untimely. Prudential and Phillips moved for summary judgment on the ground of limitations. They contended that limitations began to run on December 17, 1978, the date of Yingling's accident. In the alternative they argued that the critical date was May 7, 1980, because on that date Yingling's lawyer had written Prudential, demanding that it supply a defense. To all this Yingling retorted that limitations did not begin to run until June 8, 1983, the date he obtained judgment against Miller in the tort action. In his view, he could not bring suit against the insurers until after that date.

The trial judge opined that Yingling had "standing" to sue the insurers before he obtained the tort judgment against Miller. He concluded that on September 5, 1980— the date of filing of the first declaratory judgment suit— Yingling had knowledge that all the insurers disclaimed liability. Because of that, he held that Yingling's declaratory judgment action was barred by limitations. He granted the various defense motions and dismissed the suit.

We are now faced with five choices as to when limitations began to run on Yingling's claims against the insurers. In chronological order they are:

1.  December 17, 1978—the date of the accident (principal contention of Prudential and Phillips).

2.  May 7, 1980—the date Yingling's lawyer wrote Prudential demanding that it supply a defense for Phillips (alternative contention of Prudential and Phillips).

3.  September 5, 1980—the date the first declaratory action was filed (the trial judge's holding; contentions of MAIF, GEICO, and Wood).

4.  March 4, 1982—the date the first declaratory action was dismissed (alternative contention of Yingling).

5.  June 8, 1983—the date Yingling obtained judgment against Miller (principal contention of Yingling). We affirm the judgment below, accepting the arguments of MAIF, GEICO, and Wood. In doing so, we reject Yingling's principal contention and hold that his alternative contention is not before us. Because of our conclusion that on the facts of this case the first declaratory judgment action is the critical factor, we need not decide whether the earlier dates proposed by Prudential and Phillips triggered the running of the statute. We explain, turning first to Yingling's assertion that the crucial date is June 8, 1983.

Our first concern must be to determine when Yingling's cause of action against the insurers accrued. The three-year period prescribed by § 5–101 runs from the date a cause of action accrues, so determination of that date is critical. *Lutheran Hospital v. Levy,* 60 Md.App. 227, 232, 482 A.2d 23 (1984), *cert. denied,* 302 Md. 288, 487 A.2d 292 (1985).

Yingling reasserts his argument below, that his cause of action against the insured did not accrue until June 8, 1983, when he obtained his tort judgment against Miller. He posits that he "would have to establish a cause of action against Miller before the coverage question became a viable one." We decline to adopt that position as a rule of law.

In *Bond v. Pennsylvania National Mutual Casualty Insurance Co.,* 289 Md. 379, 424 A.2d 765 (1981), a passenger who had been injured in an automobile accident sued,

*inter alia,* various insurance companies seeking declarations as to coverage. It appears that the declaratory judgment action was brought before there was any judgment in the tort action. The Court of Appeals addressed the merits of the coverage question and it may be, as some of the appellees here contend, that this implicitly recognized the propriety of bringing such a declaratory judgment action before termination of the tort action. It may equally well be that the issue simply was not raised; nowhere in the opinion is it mentioned.

More nearly in point is *Reese v. State Farm Mutual Automobile Insurance Co.,* 285 Md. 548, 403 A.2d 1229 (1979). There, an insured, Reese, brought a breach of contract action against his insurer, State Farm. Reese alleged that the party responsible for the automobile accident in which he had been injured was uninsured and that State Farm had denied coverage under the policy's uninsured motorist endorsement. State Farm argued that a condition precedent to the suit was Reese's recovery of a judgment against the uninsured motorist. The Court of Appeals squarely rejected that contention. It held "that an insured need not, as a condition for recovery against his insurer under an insured motorist's endorsement, sue and obtain a judgment against the uninsured tortfeasor." 285 Md. at 554, 403 A.2d 1229. In other words, the insured's breach of contract action against his insurer accrued when it denied coverage, not when the insured recovered judgment against the tortfeasor.

We recognize that *Reese* involved a first-party claim; Reese was suing State Farm for breach of an insurance contract it had issued to him. But we see no principled reason why *Reese's* rule should not be extended to the case before us. If, as Yingling claims, he was "entitled to coverage on one or more of the policies issued by" the insurer-appellees "or from MAIF" by virtue of the uninsured motorist law, he was asserting a contract or a contract-type claim, one like that of a third-party beneficiary. In terms of the statute of limitations, this cause or causes

of action on that claim or those claims accrued when the insurance companies and MAIF made it clear that they rejected any possibility of coverage. It was then that Yingling knew or reasonably should have known that he had suffered an actionable wrong and it was then that the statute of limitations started to run. *See O'Hara v. Kovens,* 60 Md.App. 619, 628, 484 A.2d 275 (1984); *cert. granted,* 303 Md. 20, 491 A.2d 586 (1985).

■ This conclusion is consistent with the purpose of the Maryland Uniform Declaratory Judgment Act. That statute does not permit an action when a declaration would serve no useful purpose or serve to terminate a controversy; that is, an action to decide purely theoretical questions. *Hamilton v. McAuliffe,* 277 Md. 336, 340, 353 A.2d 634 (1976). On the other hand, it permits a declaratory judgment

if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties. Courts Art. § 3–409(a).

That a controversy existed between Yingling and the insurers (in which term we include MAIF) is clear. That controversy existed prior to the judgment in the tort action, as the first declaratory judgment suit makes clear. It could have been terminated prior to judgment in the tort action, and for many practical reasons such an early termination of the controversy would have been desirable. On the facts of this case, we reject Yingling's argument that limitations did not begin to run against him, vis a vis the insurers, until he obtained his judgment against Miller in the tort action.

As we have seen, Yingling advances a second argument. It runs thus:

Yingling had the right to rely upon the declaratory judgment action filed by Prudential and Wood as a means of determining the respective rights of the parties. He was not required to file his own declaratory judgment action. Since Prudential and Wood did not dismiss their declara-

tory action until March 4, 1982, [Yingling] would have had until March, 1985 in which to file his own declaratory action.

Yingling cites no authority in support of this proposition.

It is true, of course, that while the first declaratory judgment action was pending, with all the appellee-insurers as parties to it, Yingling may well have assumed that the coverage question would have been decided in it. That assumption was no longer viable when the action was dismissed. It is also true that so far as the statute of limitations is concerned a voluntary dismissal without prejudice has no effect. *See, e.g.,* 5 J. Moore, *Moore's Federal Practice,* par. 41.05[2] (2d ed. 1985):

> A dismissal without prejudice leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought. In the absence of a statute to the contrary [Maryland has no such statute] a party cannot deduct from the period of limitations the time during which the action so dismissed was pending.

*See also Walko Corp. v. Burger Chef Systems, Inc.,* 281 Md. 207, 215, 378 A.2d 1100 (1977). Maryland has in general adopted a strict interpretation of statutes of limitation. Extension, suspension, or waiver of the statute, or estoppel to assert it ordinarily is permissible only when there has been wrongful conduct by the party who seeks to rely on the statute. *See, e.g., Bayshore Industries Inc. v. Ziats,* 232 Md. 167, 192 A.2d 487 (1963); *Chandlee v. Shockley,* 219 Md. 493, 150 A.2d 438 (1959); *Johns Hopkins Hospital v. Lehninger,* 48 Md.App. 549, 429 A.2d 538, *cert. denied,* 290 Md. 717 (1981). *But see Bertonazzi v. Hillman,* 241 Md. 361, 216 A.2d 723 (1966). No charge of wrongful conduct by the insurers is made here.

In any case, we need not determine the validity of Yingling's theory. He complains that it was "overlooked" by the trial court. If it was, that is because Yingling never raised it there. His contentions below were that limitations began to run on the date of his judgment against Miller, or

that the insurance contracts in question were specialities and so subject to the twelve-year period of limitations prescribed by § 5–102 of the Courts Art. We have rejected the former argument; he has abandoned the second. The "reliance" theory was not raised or decided below; it is not before us. Md. Rule 1085.

Moving backwards in time, we now address the view espoused by the trial court—that limitations began to run on September 5, 1980—the date Prudential and Phillips filed the first declaratory judgment action. That court ruled that "the statute of limitations for claims against ... the insurers began to run when [Yingling] had notice of the intention of [the insurers] to deny liability on the insurance contracts." It found that "[Yingling] had actual knowledge as of September 5, 1980, that all of the above insured disclaimed liability." Since the case *sub judice* had been filed more than three years after that date, he dismissed it.

We have no real quarrel with the court's factual finding.[1] Nor do we disagree with its conclusion. As *Reese* makes clear, we are dealing here with what is essentially a contract action. *See* Widiss, *supra,* § 7.7 (courts have almost uniformly held that contract statute of limitations applies in these circumstances). *And see Schleif v. Hardware Dealers Mutual Fire Ins. Co.,* 218 Tenn. 489, 404 S.W.2d 490 (1966) and *In re Motor Vehicle Accident Indemnification Corp.,* 40 Misc.2d 970, 244 N.Y.S.2d 154 (S.Ct. Queen's County, 1963). In a contract matter a cause of action accrues when there is a breach or at least an anticipatory breach of the contract. 4 A. Corbin, *Corbin on Contracts,* §§ 948, 959 (1951). If the aggrieved party is

---

[1]. Whether Yingling actually had knowledge of all the disclaimers on the very date Prudential and Phillips filed suit is arguable. In point of fact, GEICO was not then even a party to the suit. But GEICO was eventually brought in, and it is plain from a review of the record that Yingling, by virtue of proceedings in the first declaratory judgment suit, knew of all the disclaimers more than three years before he filed the present action. Because we need not decide the precise date, we shall use the September 5, 1980, date for the sake of convenience.

unaware of the breach when it occurs, the discovery rule applies and the cause of action accrues when the aggrieved party is aware or should be aware that he has been injured. *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677 (1981). On September 5, 1980, or thereabouts (*see* note 1) Yingling was aware that all the insurers disclaimed any liability. He was thus aware that the insurance contracts under which he now claims had, so far as he was concerned, been breached. As of that time, moreover, there was plainly an existing and actual controversy between Yingling and the insurers sufficient to support a declaratory judgment action. Courts Art. § 3–409(a). By then his cause of action against the insurers clearly had accrued. Since he did not bring this action within three years of that date, the trial court correctly held it was barred by limitations.

Because the trial court so held, there was no need for it and there is no need for us to decide whether limitations started to run on the date of the Miller-Yingling accident or on May 7, 1980, and we decline to do so.

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.