**Regina QUEEN, Appellee,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
**Appellant.**

**No. 89–7085.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 27, 1990.

Decided April 13, 1990.

As Amended April 19, 1990.

As Amended May 31, 1990.

Linda Lazarus, Asst. Gen. Counsel, Washington Metropolitan Area Transit Authority, with whom, Thomas A. Medford, Jr., Asst. Gen. Counsel, Gerard J. Stief, Associate Gen. Counsel, Robert J. Kniaz, Acting Deputy Gen. Counsel, and Robert L. Polk, Gen. Counsel, Washington Metropolitan Area Transit Authority, were on the brief, for appellant, Washington Metropolitan Area Transit Authority.

M. Michael Cramer was on the brief, for appellant, Jackson Bullock.

Richard L. Swick, with whom, Patrick G. Senftle, was on the brief, for appellee.

Before WALD, Chief Judge, and MIKVA and EDWARDS, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Appellee, Regina Queen ("Queen"), was awarded a jury verdict of $1.2 million from appellant, Washington Metropolitan Area Transit Authority ("WMATA" or "the Authority"), for injuries she sustained when she was struck by a WMATA vehicle driven by an off-duty WMATA employee. The sole basis for WMATA's liability was its status as a self-insurer of its vehicles. WMATA now appeals the district court's determination that under the WMATA Interstate Compact ("WMATA Compact" or "Compact"), Pub.L. No. 89–774, 1966 U.S. CODE CONG. & AD.NEWS (80 Stat.) 1547, Queen could sue WMATA directly in federal district court on the basis of its insurer status. The district judge ruled that the Compact permitted direct action against WMATA on an insurance contract basis and, indeed, that such action was the plaintiff's "exclusive remedy" against WMATA.

Appellant now challenges the district court's reading of the WMATA Compact and claims that the interplay between the Compact and Maryland law allows WMATA to be sued as an insurer only where liability has already been found against the insured. As we are unable to determine the precise contours of WMATA's liability to a direct suit under Maryland law, we certify the decisive state law question to the Maryland Court of Appeals, and take no further action with regard to the trial verdict at this time.

## I. BACKGROUND

In September 1982, Jackson Bullock, a WMATA claims adjuster, struck Regina Queen with his WMATA company car as she was walking along the side of the road. Bullock was on a personal errand at the time. As a result of the accident, Queen sustained severe damage to her right leg, permanent facial scars, and brain damage.

Queen filed a claim with WMATA, which WMATA processed for over 18 months. At the conclusion of its investigation, WMATA denied liability for Queen's injuries as either an insurer or under a theory of *respondeat superior*. WMATA then filed an action in a Maryland circuit court, seeking a declaratory judgment of its nonliability. The Maryland court agreed with WMATA that Bullock was not acting within the scope of his employment at the time of the accident, but the state court held that WMATA *was* liable in its capacity as an insurer of the car. The court declared

that "WMATA [was] responsible as a self-insurer for the actions of Jackson Bullock" and was liable "to defend and/or indemnify Bullock for any and all claims arising out of the accident. . . ." *WMATA v. Bullock,* Equity No. 3105897, slip op. at 3 (Cir.Ct. Sept. 16, 1987), Joint Appendix ("J.A.") 135, 137 (on remand from *WMATA v. Bullock,* 68 Md.App. 20, 509 A.2d 1217 (1986)).

While WMATA's state court action was pending, but less than a month before the Maryland statute of limitations on a suit against the driver expired, Queen filed this suit in federal district court against Bullock and WMATA. Queen based jurisdiction upon Section 80 of the WMATA Compact. The WMATA Compact is an agreement by Virginia, Maryland, and the District of Columbia providing, *inter alia,* that actions against WMATA may be brought in federal court in specified circumstances wherein WMATA waives its sovereign immunity. Section 80 of the Compact provides, in part, that "[t]he exclusive remedy for . . . breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority." 1966 U.S.Code Cong. & Ad.News (80 Stat.) at 1576.

Bullock filed a motion in district court to dismiss the complaint against him on the grounds that Section 80 did not create a basis for federal jurisdiction over him. The district court granted this motion, finding that Section 80 limited an injured party's right of action to a suit against WMATA, but did not authorize suit against WMATA's employee as well. *Queen v. Bullock,* No. 85–2683, slip op. at 10 (D.D.C. Dec. 12, 1985) (memorandum opinion), J.A. 185.

WMATA also moved to dismiss on the ground that Queen could not maintain an action against WMATA in its capacity as an insurer in the absence of a judgment against the insured tortfeasor. WMATA argued that by dismissing Bullock, the court lost the critical capacity to obtain a judgment against Bullock that was necessary to trigger WMATA's liability. The district court rejected this argument on the ground that Section 80 permitted Queen to bring a direct action in federal court against WMATA. *Queen v. WMATA,* No. 85–2683, slip op. at 9, 1989 WL 17366 (D.D.C. Feb. 22, 1988) (memorandum opinion) [hereinafter cited as Feb. 22, 1988 Mem.Op.], J.A. 134.

Subsequently, WMATA requested that the court alter the structure of the trial to avoid potential prejudice to it as a "deep pocket" insurer. WMATA contended that even though it was now the sole defendant, the only issue in the case was whether Bullock had acted negligently. WMATA was concerned that the known presence of WMATA as an affluent defendant would affect the jury's assessment of Bullock's liability. Accordingly, it asked that the court conduct the proceedings as though Bullock, and not WMATA, were the sole defendant. The court acceded to this request. *See* Defendant's Supplemental Pretrial Statement, at 8 (Oct. 27, 1988), J.A. 76; Transcript of Pre-trial Conference, at 15–21 (Oct. 28, 1988), J.A. 69–75. Throughout trial, the case was referred to as *Queen v. Bullock;* Bullock sat at the defense table along with WMATA's lawyers; Bullock was identified as the defendant; and the jury was instructed to render its verdict solely with respect to Bullock. During the course of these proceedings, the statute of limitations under Maryland law expired as to Bullock.

WMATA appeals the jury verdict in favor of the plaintiff, contesting the district court's interpretation of the WMATA Compact that permitted the suit against WMATA to be brought in federal court.

## II. FEDERAL JURISDICTION

### A. *Interpretation of Section 80*

WMATA's principal argument on appeal is that the district court misconstrued Section 80 as allowing a direct action against WMATA, the insurer, without a prior judgment against Bullock, the insured. Section 80 provides:

The Authority shall be liable for its contracts and for its torts and those of its . . . employees . . . committed in the conduct of any proprietary function, *in ac-*

*cordance with the law of the applicable signatory* ... but shall not be liable for any torts occurring in the performance of a governmental function. *The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority.* 1966 U.S. CODE CONG. & AD.NEWS (80 Stat.) at 1576 (emphasis supplied).

Section 80 of the WMATA Compact provides that the "exclusive remedy" for contract or tort suits "for which the Authority shall be liable" is an action against the Authority. The district court reasoned that under "the law of the applicable signatory" (*i.e.*, Maryland), WMATA could be ultimately liable as a self-insurer for any injuries caused by Bullock. Given this "preliminary finding of substantive responsibility adequate to indicate the appropriateness of limiting the suit to the Authority," the court ruled that the "exclusive remedy" for claims upon which "the Authority shall be liable" was a direct suit against WMATA. *Queen v. WMATA*, Feb. 22, 1988 Mem.Op. at 7, J.A. 132. In effect, the court found that Maryland law had already determined that WMATA could be ultimately held liable as an insurer; having made that finding, the court interpreted Section 80 to require that any action on that basis be brought against WMATA directly.

■ The plain meaning of Section 80 does not support the district court's reading. By its terms, Section 80 provides for an "exclusive" action against WMATA "for such *breach* of contracts and torts ... *as herein provided*" (emphasis supplied). Thus, Section 80 expressly provides for direct actions where WMATA is charged with a tort or a *breach* of its contracts, not merely where a preliminary finding of another actor's wrongdoing might subsequently lead WMATA to breach a contract. Section 80 also states categorically that "[t]he Authority shall be liable for its contracts ... *in accordance with the law of the applicable signatory....*" (emphasis supplied). This limitation plainly incorporates *all* Maryland law on tort and contract

liability. Queen could, therefore, sue WMATA directly only in circumstances where Maryland law countenances such a direct action.

■ In considering WMATA's first appeal of its original declaratory judgment suit, the Maryland Court of Special Appeals held that "WMATA would have no derivative liability as Bullock's employer; its liability can rest only upon its status as an insurer of the vehicle." *WMATA v. Bullock*, 509 A.2d 1217, 1221 (Md.Spec.App. 1986). Since Queen was a party to the Maryland action, and had full opportunity to participate in it, she cannot relitigate the issues decided there. *See Queen v. WMATA*, No. 85–2683, slip op. at 4–5 (D.D.C. Oct. 23, 1986) (memorandum opinion), J.A. 146–47; *cf. McCord v. Bailey*, 636 F.2d 606, 608–09 (D.C.Cir.1980), *cert. denied*, 451 U.S. 983 (1981) (discussing collateral estoppel). Any direct action by Queen against WMATA, therefore, must be grounded in WMATA's insurance obligation to Bullock. In light of our reading of Section 80 to permit a direct action against WMATA only to the extent that it accords with Maryland law, we find that federal jurisdiction over Queen's suit against WMATA exists only insofar as Maryland law permits in the circumstances of this case direct action by an injured tort victim against the tortfeasor's insurer.

B. *Scope of Direct Action*

As a general rule, Maryland law does not permit a third-party plaintiff to sue an insurer directly on its contract with the insured until after the third party has attempted to satisfy its judgment against the insured. Maryland's highest court has routinely upheld dismissal of a direct action against a commercial insurer on the ground that "liability polices [sic] are only required to afford a direct action by an injured party against an insurer after a judgment has been obtained against the assured, which is unsatisfied after execution." *Gorman v. St. Paul Fire and Marine Insurance Co.*, 121 A.2d 812, 815 (Md.1956); *see also Belcher v. GEICO*, 387 A.2d 770, 775 (Md. 1978); Md.Ann.Code art. 48A, § 481 (1986).

Since Queen did not sue Bullock in state court within the three-year limitation period, and since the district court determined that it had no jurisdiction over Bullock, Queen has been unable to obtain—let alone to enforce—a judgment against Bullock. Consequently, Maryland's traditional bar against direct action seems, on a first look, to preclude Queen's suit against WMATA.

The Maryland courts, however, have yet to decide whether the direct action proscription applies in the unusual circumstances present in this case. As noted above, WMATA initially sought a state court declaratory judgment freeing it from liability on its self-insurance contract with Bullock. WMATA's action had important ramifications. As the Maryland Court of Special Appeals held in *Yingling v. Phillips*, 501 A.2d 87 (Md.Spec.App.1985), an insurer's filing of a declaratory judgment action triggers the statute of limitations as soon as the injured party has actual knowledge of the suit, which operates as a disclaimer of liability. In *Yingling*, an injured party who had obtained a judgment against an uninsured motorist sued various insurers to enforce his judgment. More than three years earlier, however, the insurers had sought a declaratory judgment of nonliability. Under the ruling of the Maryland court, the insurer's declaratory action was tantamount to an anticipatory breach that became actionable when the aggrieved party had—or should have had—notice. *Id.* at 92.[1]

Considered together with the general bar on direct actions, the *Yingling* rule creates the following anomaly: A party injured by an impecunious insured cannot directly sue the insurer because of the direct action bar. Instead, the plaintiff is constrained first to obtain a judgment against the insured, then to attempt to satisfy that judgment, and finally to sue the insurer. The insurer, however, can bring suit immediately after the accident disclaiming liability. Under *Yingling*, if the injured plaintiff does not obtain a judgment from the insured within three years of the filing of the insurer's declaratory action, the plaintiff would be time-barred from suing the insurer directly to satisfy his judgment.

Two routes of escape might lie from this dilemma. Maryland's highest court might limit or redefine the scope of *Yingling* in these circumstances so that the statute of limitations does not begin to run on the date the insurer's suit is filed, rather than the date when it is decided. This approach, however, would still not relieve the plaintiff's "catch–22" if his suit against the insured was delayed in the courts for a period extending more than three years beyond the disposition of the insurer's declaratory action. A waiver of the direct action proscription would cure the dilemma more effectively. Provided that the insured's liability is determined in the course of the plaintiff's suit against the insurer, allowing the plaintiff to sue the insurer directly after the insurer disclaims liability would guarantee the injured plaintiff recourse from the insurer and would prevent an insurer from employing an anticipatory breach to avoid liability altogether.[2]

■ Ultimately, however, we cannot resolve the tension between *Yingling* and the direct action proscription without speculating on a matter of local doctrine. *Cf. Delahanty v. Hinckley*, 845 F.2d 1069, 1070 (D.C.Cir.1988). In such circumstances, the appropriate procedure is to certify to the proper state court the relevant legal question. We therefore certify to the Maryland Court of Appeals the question of whether under Maryland law, when an insurer files a declaratory action in effect disclaiming its liability, a plaintiff (1) may be excused from obtaining a preliminary judgment against the insured before directly suing

---

**1.** The Maryland cases clearly suggest that after obtaining a judgment, an injured claimant "stands in the shoes of the insured wrongdoer" with regard to recovery from the insurer. *Travelers Insurance Co. v. Godsey*, 273 A.2d 431, 434 (Md.1971). At issue here is a different question—the rights of the injured claimant vis-a-vis

the insurer before obtaining a judgment against the insured.

**2.** The determination of the insured's liability could be made even without jurisdiction over the insured because any finding of liability would run directly against the insurer.

the insurer, and (2) may determine the extent of the insured's liability in the context of the suit against the insurer. *See* Md. Ann.Code, *Courts and Judicial Proceedings* § 12–601 (1989) (certification statute). A formal statement of the certified question appears in the conclusion to this opinion.

If the Maryland Court of Appeals answers affirmatively, we can conclude that under the "applicable law of the signatory state," WMATA's anticipatory disclaimer of liability permitted Queen's direct action against WMATA—filed, as it was, within the limitation period triggered by WMATA's suit—even without her having received a judgment against Bullock. Since Section 81 of the WMATA Compact provides federal jurisdiction over all suits involving WMATA, *see* 1966 U.S.CODE CONG. & AD.NEWS (80 Stat.) at 1576, jurisdiction would have been properly founded in the district court. We would then deny WMATA's appeal and affirm the trial verdict. If the Maryland Court of Appeals responds negatively, however, we will be constrained to vacate Queen's verdict because the district court did not properly exercise jurisdiction over WMATA.

### III. APPELLANT'S OTHER ARGUMENTS

■ WMATA's remaining claims, to the effect that Queen's counsel made prejudicial statements during trial, are without merit. First, WMATA objects that plaintiff's counsel disobeyed the court's instruction not to identify WMATA as the defendant when he stated that Bullock was using a "company car" at the time of the accident. Queen's counsel never stated that WMATA was either a defendant or Bullock's insurer. Counsel stated only that Bullock, a WMATA employee, was driving a company car. At *most*, this statement communicates an *inference* that the car was insured by WMATA. The only information actually conveyed—that WMATA owned the car—was disclosed by WMATA itself when it introduced the accident report. Contrary to WMATA's argument, counsel's statement simply cannot be characterized as an inherently prejudicial reference to the defendant's financial status.

*See Arnold's Hofbrau, Inc. v. George Hyman Const. Co., Inc.*, 480 F.2d 1145, 1150–51 (D.C.Cir.1973).

■ Second, WMATA claims that plaintiff's counsel prejudiced WMATA when he stated, in closing, that he thought "a million dollars" was appropriate compensation. As appellant concedes, in order to constitute reversible error, a counsel's request for specific compensation must cause actual prejudice. *Piper v. Andrews*, 216 F.Supp. 758, 762 (D.D.C.1963). The trial court in this case expressly found no prejudice. The court observed that "[t]he plaintiff's evidence, if believed, provided sufficient basis for awarding $1,200,000 in view of her extensive injuries, pain and suffering and residual disabilities." *Queen v. WMATA*, No. 85–2683, slip op. at 4 (D.D.C. Feb. 22, 1989) (memorandum opinion), J.A. 18. Plaintiff's counsel, moreover, affirmatively withdrew his remark and apologized to the jury for suggesting a specific measure of compensation. The judge also immediately instructed the jury to disregard the comment. Consequently, we hold that the trial court's finding of no prejudice was not clearly erroneous and that plaintiff's counsel's statement presents no basis for reversal.

### IV. CONCLUSION

Pursuant to Part II, *supra*, we certify the following questions to the Maryland Court of Appeals:

> Under Maryland law, when an insurer files a declaratory action effectively disclaiming liability, may a plaintiff (1) be excused from obtaining a preliminary judgment against the insured before suing the insurer, and (2) determine the extent of the insured's liability in the context of the suit against the insurer?

Part I of this opinion shall constitute the statement of relevant facts required by the Maryland certification statute. Md.Ann. Code, *Courts and Judicial Proceedings*, § 12–603 (1989).

*It is so ordered.*