597 A.2d 423

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY

v.

### Regina QUEEN.

Misc. No. 8, Sept. Term, 1990.

Court of Appeals of Maryland.

Oct. 28, 1991.

Linda Lazarus, Asst. General Counsel (Gerard J. Stief, Associate General Counsel, Robert J. Kniaz, Acting Deputy General Counsel, Arnold I. Melnick, Deputy General Counsel, Robert L. Polk, General Counsel, Thomas A. Medford, Jr., Asst. General Counsel, Washington, D.C., on brief), for appellant.

Richard L. Swick, Washington, D.C., for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

ELDRIDGE, Judge.

The United States Court of Appeals for the District of Columbia Circuit, 901 F.2d 135, has certified to this Court a question of Maryland law.[1] The issue is whether a liability insurer's disclaimer of liability, by filing a declaratory judgment action prior to a tort suit against the insured, excuses the tort plaintiff from obtaining a judgment against the insured tortfeasor before maintaining an action against the liability insurer.

The facts are as follows. The Washington Metropolitan Area Transit Authority ("WMATA") was created by an interstate compact among Maryland, Virginia and the District of Columbia. *See* WMATA Compact, reprinted at Maryland Code (1977, 1991 Cum.Supp.), § 10–204 of the Transportation Article. The compact was consented to by the United States Congress in 1966. WMATA operates a mass transit system for the City of Washington and the Washington suburban areas of Maryland and Virginia. WMATA also acts as a self-insurer with regard to liability insurance.

On September 10, 1982, in Anne Arundel County, Maryland, Jackson Bullock, a WMATA employee and a resident of Maryland, was driving a motor vehicle which struck and severely injured Regina Queen. Queen was also a resident of Maryland. The vehicle which Bullock was driving was owned by WMATA. Shortly thereafter, Queen filed a claim with WMATA. At the conclusion of an eighteen month investigation, WMATA denied liability as either an insurer of the vehicle or as Bullock's employer under a theory of respondeat superior.

---

1. Uniform Certification of Questions of Law Act, Maryland Code (1974, 1989 Repl.Vol., 1991 Cum.Supp.), § 12–601 *et seq.* of the Courts and Judicial Proceedings Article.

In April 1984, WMATA filed in the Circuit Court for Anne Arundel County a declaratory judgment action against Bullock and Queen, requesting a declaration that it was not liable to Queen on any basis. WMATA argued that Bullock was not acting within the scope of his employment at the time of the accident and that, therefore, WMATA was not liable as employer on a theory of respondeat superior. WMATA further argued that because Bullock's use of the motor vehicle was non-permissive, it was not liable as the insurer of the vehicle.[2] On September 11, 1985, the Circuit Court for Anne Arundel County issued a declaration agreeing with WMATA that Bullock was not acting within the scope of employment but holding that WMATA was liable as the insurer of the vehicle.

On June 6, 1986, the Court of Special Appeals of Maryland vacated the circuit court's declaratory judgment and remanded so that a further examination of the precise nature of the insurance coverage undertaken by WMATA as a self-insurer could be made. *Washington Transit Authority v. Bullock,* 68 Md.App. 20, 509 A.2d 1217, *cert. denied,* 308 Md. 237, 238, 517 A.2d 1120 (1986).

After further review, the Circuit Court for Anne Arundel County again declared that Bullock's use of the vehicle was permissive and that self-insurance coverage did exist. The circuit court further declared that WMATA as the insurer should defend and indemnify Bullock in connection with the claims arising out of the accident. The Court of Special Appeals affirmed in an unreported opinion, and this Court denied WMATA's petition for a writ of certiorari. *Wash-*

---

**2.** Apparently a provision in WMATA's self-insurance certificate filed in the District of Columbia stated that only permissive use would be covered. When Bullock began to work for WMATA in 1972, he was permitted to use the vehicle for both business and personal use. In 1982, however, WMATA apparently changed its procedures so that permissive use included only business purposes. It was disputed in the Circuit Court for Anne Arundel County whether this procedural change was binding upon Bullock. Bullock and Queen argued that, for several reasons, the procedural change was inapplicable to Bullock:

*ington Metropolitan Area Transit v. Bullock,* 313 Md. 506, 545 A.2d 1344 (1988).

In August 1985, while WMATA's declaratory judgment action in Anne Arundel County was pending, but less than a month before the Maryland statute of limitations on a tort suit against Bullock was to have run, Queen filed the present action against both Bullock and WMATA in the United States District Court for the District of Columbia. The basis for federal jurisdiction was § 80 of the Compact which provides that an action against WMATA may be brought in a federal court under specified circumstances. On December 11, 1985, the United States District Court held that § 80 of the Compact permitted an injured party to bring a federal court action against WMATA but did not confer federal jurisdiction for a suit against WMATA's employees. The tort action against Bullock, therefore, was dismissed. Thereafter the federal district court stayed the proceedings against WMATA pending a decision in the Anne Arundel County declaratory judgment action.

On October 1, 1986, the federal district court granted a partial summary judgment in favor of WMATA in light of the June 1986 ruling of the Court of Special Appeals. The district court dismissed Queen's claim against WMATA under the theory of respondeat superior but refused to dismiss the claim against WMATA as the insurer of the vehicle. WMATA then moved to dismiss the remaining claim on the ground that Queen could not maintain an action against WMATA in its capacity as an insurer in the absence of a judgment against the insured tortfeasor. The federal district court rejected this argument, holding that § 80 of the Compact permitted Queen to sue WMATA in a direct action.

WMATA, apparently believing that its presence at the trial as an insurer would be prejudicial, requested the United States District Court to alter the structure of the trial. The district court agreed and permitted the trial to go forward as if Bullock were the only defendant. At the conclusion of the trial a judgment was rendered in favor of

Queen for $1,200,000.00. During the course of these federal court proceedings, the statute of limitations under Maryland law expired as to Bullock.

WMATA appealed to the United States Court of Appeals for the District of Columbia Circuit, contending that the district court's interpretation of § 80 of the Compact, as permitting a direct action, was erroneous. The United States Court of Appeals agreed, stating that the "plain meaning of Section 80 does not support the district court's reading." *Queen v. Washington Metro. Area Transit Authority*, 901 F.2d 135, 138 (D.C.Cir.1990). The Court of Appeals explained that § 80 "provides for direct actions where WMATA is charged with a tort or a *breach* of its contracts, not merely where a preliminary finding of another actor's wrongdoing might subsequently lead WMATA to breach a contract." The court also held that § 80 further provides that " '[t]he Authority shall be liable for its contracts ... *in accordance with the law of the applicable signatory....*' " [3]

The United States Court of Appeals concluded that Queen could only maintain an action against WMATA directly where Maryland law would permit such an action. The court then turned to whether Maryland law would permit the action. It first recognized the general rule prohibiting tort plaintiffs from suing the liability insurer directly until after the tort plaintiff had obtained a judgment against the insured.

---

**3.** Section 80, entitled "Liability for contracts and torts," provides in its entirety as follows:

"The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this title shall be construed as a waiver by the District of Columbia, Maryland, Virginia and the counties and cities within the zone of any immunity from suit."

The United States Court of Appeals, however, noted that the general rule against direct actions, coupled with the Court of Special Appeals' decision in *Yingling v. Phillips,* 65 Md.App. 451, 501 A.2d 87 (1985), created an anomaly. As explained by the United States Court of Appeals, *Yingling* held that an insurer's disclaimer of liability by filing a declaratory judgment action started the running of the statute of limitations on a claim against the insurer by a tort plaintiff. The anomaly created by *Yingling* and the general rule prohibiting direct actions was that a party injured by a judgment-proof insured

> "cannot directly sue the insurer because of the direct action bar. Instead, the plaintiff is constrained first to obtain a judgment against the insured, then to attempt to satisfy that judgment, and finally to sue the insurer. The insurer, however, can bring suit immediately after the accident disclaiming liability." *Queen v. Washington Metro Area Transit Authority, supra,* 901 F.2d at 139.

Thus, under *Yingling,* if the injured tort plaintiff failed to obtain a judgment against the insured within three years of the filing of the insurer's action, "the plaintiff would be time-barred from suing the insurer directly to satisfy his judgment." *Ibid.* Because of this anomaly, the United States Court of Appeals certified the following two-part question to this Court:

> "Under Maryland law, when an insurer files a declaratory action effectively disclaiming liability, may a plaintiff (1) be excused from obtaining a preliminary judgment against the insured before suing the insurer, and (2) determine the extent of the insured's liability in the context of the suit against the insurer?"

Maryland does not have a statute generally authorizing direct actions by an injured person against the tortfeasor's liability insurer.[4] Under this Court's decisions, a tort claim-

---

4. Maryland Code (1957, 1991 Repl.Vol.), Art. 48A, § 481, prohibits a liability insurance policy from requiring that the insured pay the liability or loss and states that a liability policy shall provide that

ant may not maintain a direct action against the defendant tortfeasor's liability insurer until there has been a determination of the insured's liability in the tort action. Once there is a verdict or judgment in the tort action, a direct action may be maintained against the liability insurer. *See Allstate Ins. Co. v. Atwood,* 319 Md. 247, 257–259, 264–265, 572 A.2d 154, 159, 162–163 (1990) ("Maryland law generally precludes" direct "actions by plaintiffs against defendants' liability insurers," and the liability insurer may not be a party to the tort suit "prior to the jury's verdict"); *Reese v. State Farm Mut. Auto. Ins.,* 285 Md. 548, 552, 403 A.2d 1229, 1231 (1979); *Belcher v. Gov't Employees Ins. Co.,* 282 Md. 718, 726, 387 A.2d 770, 775 (1978); *State v. Arundel Park Corp.,* 218 Md. 484, 487, 147 A.2d 427, 428 (1959); *Gorman v. St. Paul Fire and Marine Ins. Co.,* 210 Md. 1, 7, 121 A.2d 812, 816 (1956) (no "direct action against the insurer by a tort claimant in advance of some determination of liability on the part of the insured in the pending action").[5]

The Maryland rule generally prohibiting actions between tort claimants and alleged tortfeasors' liability insurers is rooted in considerations of public policy. As recently pointed out in *Allstate Ins. Co. v. Atwood, supra,* 319 Md. at 258, 572 A.2d at 159, "the policy of the law is firmly against

---

when the insured is bankrupt, insolvent or unable to satisfy a judgment, the injured party may maintain an action against the insurer. The statute, however, does not purport to set forth the earliest time under Maryland law when a direct action may be maintained by the injured tort claimant against the defendant's liability insurer. *See Bass v. Standard Acc. Ins. Co.,* 70 F.2d 86, 87–88 (4th Cir.1934).

**5.** While Maryland law prohibits defendants' liability insurers from being parties to the underlying tort action prior to a determination of tort liability, there is no similar prohibition with regard to plaintiffs' uninsured motorist carriers. *See Lane v. Nationwide Mut. Ins. Co,* 321 Md. 165, 582 A.2d 501 (1990), and cases discussed therein.

Moreover, in the unusual situation where insurance is relevant to the issue of tort liability, there is an exception to the rule against direct actions. *See McCormick v. Church,* 219 Md. 422, 431, 149 A.2d 768, 773–774 (1959). This exception would not be applicable in the present case.

the injection in tort trials of liability insurance. The matter of liability insurance is irrelevant to the issue of the defendant's liability and is highly prejudicial."[6]  *See Morris v. Weddington*, 320 Md. 674, 680, 579 A.2d 762, 765 (1990).

As a tort claimant is not entitled to bring an action on the liability insurance policy until a determination in the tort case of the insured's liability, the statute of limitations on such an action would not begin running prior to that time. The statute of limitations against the insurer would ordi-

---

**6.** We note that there has already been a violation of the Maryland policy against direct actions at the earlier stage of this litigation when the Circuit Court for Anne Arundel County entertained the declaratory judgment action. In that action, the liability insurer, the injured tort claimant, and the alleged tortfeasor, were all parties litigating an issue directly relating to the employer's tort liability, *i.e.*, scope of employment. Furthermore, under some circumstances, whether the use of a vehicle was permitted by the employer may be a pertinent factor in determining scope of employment.

Under Maryland law, declaratory judgment actions by or against the tortfeasor's liability insurer, in advance of a determination of liability in a tort suit, are normally precluded except when the issues in the declaratory judgment action are independent and separable from the claims of the tort claimant. *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 252, 256–257, 572 A.2d 154, 156, 158–159 (1990); *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 405–407, 347 A.2d 842, 848–850 (1976). While in *Brohawn* there was a tort suit already pending when the declaratory judgment action was brought by the tort defendant's liability insurer, much of the reasoning in *Brohawn*, and the reasoning set forth in *Allstate Ins. Co. v. Atwood, supra,* 319 Md. at 256–258, 572 A.2d at 158–159, is equally applicable where the declaratory judgment action is filed before the tort action is filed. *See Hannon v. Western Title Ins. Co.*, 211 Cal.App.3d 1122, 1128, 260 Cal.Rptr. 21, 25 (1989); *Amer. Nuclear Insurers v. Metro. Edison*, 399 Pa.Super. 375, 380, 582 A.2d 390, 392 (1990), *app. denied,* 592 A.2d 1295 (1991); *Employers' Fire Ins. Co. v. Beals*, 103 R.I. 623, 630, 240 A.2d 397, 401–402 (1968). Furthermore, as pointed out in *Allstate Ins. Co. v. Atwood, supra,* 319 Md. at 257, 572 A.2d at 159, the reasons for not permitting the tort issues to be litigated in declaratory judgment actions where the liability insurer is a party, and the reasons for not permitting the alleged tortfeasor's liability insurer to be a party in a tort case prior to verdict, are essentially the same.

Although we believe that the declaratory judgment action was improper, the Circuit Court for Anne Arundel County clearly had subject matter jurisdiction. Thus, the inappropriate exercise of jurisdiction in the declaratory judgment action has no bearing upon the present case.

narily not begin running until the insurer, after a judgment in the underlying tort case, breaches the policy by refusing to pay. *See Lane v. Nationwide Mut. Ins. Co.,* 321 Md. 165, 173–174, 176–177, 582 A.2d 501, 505–507 (1990).

The United States Court of Appeals in the instant case, however, recognized that the Court of Special Appeals' holding in *Yingling v. Phillips, supra,* 65 Md.App. 451, 501 A.2d 87, may place a tort claimant in a very difficult position. In *Yingling,* prior to a determination of tort liability in the pending tort action, the tort plaintiff's uninsured motorist carrier brought a declaratory judgment action against the parties in the tort case and against the alleged liability insurers of the tort defendants. In the declaratory judgment action, all of the insurers denied liability. The declaratory judgment action was subsequently dismissed. The Court of Special Appeals held in *Yingling* that the insurers' disclaimers of liability in the declaratory judgment action started the running of the statute of limitations against the plaintiff in the tort case with regard to any claims which the plaintiff might have on the insurance policies. In reaching this result, the Court of Special Appeals relied upon an "anticipatory breach of contract" theory.

There is obviously a degree of conflict between the *Yingling* holding and the rule precluding direct actions by injured persons against liability insurers. If a liability insurer disclaims liability prior to the outcome of the tort case, and if the *Yingling* holding were correct, the statute of limitations regarding the injured party's claim on the liability insurance policy could run before the injured party was entitled to bring an action against the liability insurer.

The conflict between the rule restricting direct actions and the *Yingling* holding was resolved when this Court overruled *Yingling* in *Lane v. Nationwide Mut. Ins. Co., supra,* 321 Md. at 177, 582 A.2d at 507. In *Lane,* we rejected *Yingling's* application of the "anticipatory breach" theory. Under the principles set forth in *Lane,* it is clear that the statute of limitations with regard to a tort plain-

tiff's claim against the tort defendant's liability insurer would not begin to run prior to a determination of liability in the tort case. Consequently, there is no tension between the rule restricting direct actions and the running of limitations against the tort defendant's liability insurer.

We answer the first part of the certified question in the negative. An injured tort plaintiff is *not* excused from obtaining a judgment against the insured tortfeasor before suing the liability insurer. Our answer to the first part of the question makes it unnecessary to address the second part.

QUESTION OF LAW ANSWERED AS HEREIN SET FORTH. COSTS TO BE EQUALLY DIVIDED.