**Regina QUEEN, Appellee,**

v.

**Jackson BULLOCK**

**Washington Metropolitan Area Transit Authority, Appellant.**

**No. 89–7085.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 27, 1990.

Decided March 3, 1992.

Linda Lazarus, Asst. Gen. Counsel, Washington Metropolitan Area Transit Authority, with whom, Gerard J. Stief, Associate Gen. Counsel, Robert J. Kniaz, Acting Deputy Gen. Counsel, and Robert L. Polk, Gen. Counsel, Thomas A. Medford, Asst. Gen. Counsel, Washington Metropolitan Area Transit Authority, Washington, D.C., were on the brief for appellant, Washington Metropolitan Area Transit Authority.

M. Michael Cramer, Washington, D.C., was on the brief for appellant, Jackson Bullock.

Richard L. Swick, with whom Patrick G. Senftle, Washington, D.C., was on the brief for appellee.

Before MIKVA, Chief Judge, and WALD * and EDWARDS, Circuit Judges.

PER CURIAM:

Regina Queen was hit by a car and brought a direct action against the Washington Metropolitan Area Transit Authority (WMATA), the driver's insurer, in the district court. She won a jury verdict, and WMATA appealed. A panel of this Court held that federal jurisdiction would lie only if Maryland law allowed a direct action against WMATA in the circumstances of Ms. Queen's case, and certified the direct-action question to the Maryland Court of Appeals. *Queen v. Washington Metro. Area Transit Authority*, 901 F.2d 135 (D.C.Cir.1990). "If the Maryland Court of Appeals responds negatively," we noted, "we will be constrained to vacate Queen's verdict." *Id.* at 140.

The Maryland Court of Appeals *did* respond negatively, *Washington Metro. Area Transit Authority v. Queen*, 324 Md. 326, 597 A.2d 423 (1991) (Certified Question Decision). It noted that *Yingling v. Phillips*, 65 Md.App. 451, 501 A.2d 87 (1985) had created a procedural anomaly for Ms. Queen that might have justified an exception to Maryland's bar against direct actions, but *Yingling* has since been overruled. 597 A.2d at 427 (citing *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 582 A.2d 501 (1990)). Ms. Queen now argues that the overruling of *Yingling* should not be applied retroactively. But whether or not it is applied retroactively, we are forced to conclude that she cannot maintain a direct action against WMATA. We hold, therefore, that the jury verdict must be vacated for lack of jurisdiction.

I. BACKGROUND

In September, 1982, Regina Queen was hit by a car and badly injured. The car belonged to WMATA, and was driven by Jackson Bullock, a WMATA claims adjuster. WMATA refused to compensate Ms. Queen, and filed a declaratory judgment action in Maryland Court. The Maryland court held that Mr. Bullock was acting outside the scope of his employment, but that WMATA was Mr. Bullock's liability insurer. Meanwhile, Ms. Queen had sued Mr. Bullock and WMATA in the district court, claiming jurisdiction under the WMATA Compact. The district court dismissed Mr. Bullock for lack of jurisdiction, but allowed Ms. Queen to bring a direct action against WMATA. Ms. Queen won a jury verdict, and WMATA appealed. *See Queen v. WMATA*, 901 F.2d 135 (D.C.Cir. 1990).

We held that the WMATA Compact incorporated Maryland law: "Queen could ... sue WMATA directly only in circumstances where Maryland law countenances such a direct action." 901 F.2d at 138. Moreover, because WMATA's declaratory judgment action was *res judicata*, "[a]ny direct action by Queen against WMATA ... must be grounded in WMATA's insurance obligation to Bullock." *Id.* Therefore, we concluded, "federal jurisdiction over Queen's suit against WMATA exists only insofar as Maryland law permits in the circumstances of this case direct action by an injured tort victim against the tortfeasor's insurer." *Id.*

We then examined Maryland law and recognized that Maryland has traditionally barred a direct action by an injured party against the tortfeasor's liability insurer, before judgment against the tortfeasor. *Id.* at 138–39. But this case presented a twist. In *Yingling v. Phillips*, 65 Md.App. 451, 501 A.2d 87 (1985), the Maryland Court of Special Appeals held that the insurer's filing of a declaratory judgment action would trigger the statute of limitations for suits against the insurer. The *Yingling* rule, applied to Ms. Queen's case, would create the following anomaly:

A party injured by an impecunious insured cannot directly sue the insurer because of the direct action bar. Instead, the plaintiff is constrained first to obtain a judgment against the insured, then to

---

* Circuit Judge Wald was a member of the panel when the case was argued but did not participate in this opinion.

attempt to satisfy that judgment, and finally to sue the insurer. The insurer, however, can bring suit immediately after the accident disclaiming liability. Under *Yingling*, if the injured plaintiff does not obtain a judgment from the insured within three years of the filing of the insurer's declaratory action, the plaintiff would be time-barred from suing the insurer directly to satisfy his judgment. 901 F.2d at 139.

Therefore, we certified to the Maryland Court of Appeals the following question:
Under Maryland law, when an insurer files a declaratory action effectively disclaiming liability, may a plaintiff (1) be excused from obtaining a preliminary judgment against the insured before suing the insurer, and (2) determine the extent of the insured's liability in the context of the suit against the insurer?

*Id.* at 140. Recognizing that the statute of limitations for Ms. Queen's action against Mr. Bullock had already run, we also stated that "[i]f the Maryland Court of Appeals responds negatively ... we will be constrained to vacate Queen's verdict." *Id.*

The Maryland Court of Appeals *did* respond negatively, noting that *Yingling* had since been overruled, *see Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 582 A.2d 501 (1990), and that there was no longer a *Yingling* anomaly to justify an exception to Maryland's rule against direct actions:
Under the principles set forth in *Lane*, it is clear that the statute of limitations with regard to a tort plaintiff's claim against the tort defendant's liability insurer would not begin to run prior to a determination of liability in the tort case. Consequently, there is no tension between the rule restricting direct actions and the running of limitations against the tort defendant's liability insurer.

597 A.2d at 427.

Ms. Queen now urges this Court to affirm the jury verdict, arguing that the Certified–Question Decision should be applied prospectively, under *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). WMATA has filed a cross-motion for summary reversal.

## II. ANALYSIS

Before considering Ms. Queen's arguments about retroactivity, we must decide whether or not the retroactive application of the Certified–Question decision would make any difference to the disposition of her case. The new law, announced by the Certified–Question Decision, is that (a) an injured party cannot bring a direct action against the liability insurer, before suing the tortfeasor and (b) the liability insurer does not trigger the statute of limitations by bringing a declaratory judgment action. If the old law, which existed at the time Ms. Queen filed her direct action, would have allowed her to bring that action, then the retroactivity problem arises. However, if the old law would have prohibited a direct action, then we need not decide whether the Certified–Question Decision should apply prospectively. In that case, Ms. Queen's action would be dismissed under the old law *or* the new law.

The old law was composed of two elements. The first was Maryland's traditional prohibition against direct actions; the second was *Yingling*. If these two elements interacted to create an exception to the direct-action bar for Ms. Queen, we must address the retroactivity question. But if *Yingling* did not create an exception, retroactivity is irrelevant to our decision.

We have already recognized that *Yingling* did *not* create an exception to the direct-action bar: "Considered together with the general bar on direct actions, the *Yingling* rule creates the following anomaly: A party injured by an impecunious insured cannot directly sue the insurer because of the direct action bar." 901 F.2d at 139. Thus, we suggested that Maryland might either "limit or redefine the scope of *Yingling*," or "waive[ ] ... the direct action proscription." *Id.* If *Yingling*, of course, had allowed Queen to bring a direct action, there would have been no "anomaly" to resolve.

The Maryland Court of Appeals reached the same conclusion:

There is obviously a degree of conflict between the *Yingling* holding and the rule precluding direct actions by injured persons against liability insurers. If a liability insurer disclaims liability prior to the outcome of the tort case, and if the *Yingling* holding were correct, the statute of limitations regarding the injured party's claim on the liability insurance policy could run before the injured party was entitled to bring an action against the liability insurer.

597 A.2d at 427.

Ms. Queen argues in the alternative that a direct action would have been available to her, even without *Yingling*, because a Maryland precedent allowed a tort victim's direct action against a repudiating insurer. *See Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 403 A.2d 1229 (1979). But *Reese* allowed a direct action against the uninsured-motorist insurer, not against the liability insurer. In any event, we have already held that Ms. Queen would not normally have a direct action against WMATA, *see* 901 F.2d at 138–39, and our holding is the law of the case.

### III. CONCLUSION

In light of the Certified Question Decision and our earlier decision, the judgment for Ms. Queen must be reversed. We hold, therefore, that the jury verdict must be vacated for lack of jurisdiction, and we remand to the district court for proceedings not inconsistent with this opinion.

*So ordered.*