687 A.2d 652

**HARFORD MUTUAL INSURANCE COMPANY**

v.

**WOODFIN EQUITIES CORP. et al.**

**No. 116, Sept. Term, 1996.**

Court of Appeals of Maryland.

Jan. 14, 1997.

Reconsideration Denied Feb. 11, 1997.

400

Albert J. Mezzanotte, Jr., Edward M. Buxbaum, and Judith C. Ensor, Towson, for Petitioner.

Robert D. Sokolove, Sokolove & Associates, Bethesda, for Respondents.

Submitted to BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI and RAKER, JJ.

ELDRIDGE, Judge.

The principal questions presented in this case concern important coverage issues under a standard general liability insurance policy. Nevertheless, for reasons hereafter discussed, we shall not at this time be able to reach the merits of those insurance coverage issues.

## I.

This litigation arises out of the construction of a hotel in Rockville, Maryland, known as the Woodfin Suites Hotel. The plaintiffs Woodfin Equities Corporation and Samuel A. Hardage own and operate the hotel. The plaintiff Hardage Construction Company was the general contractor which constructed the hotel. Deerfield Engineering, Inc., owned by Donald Paulgaard, was the subcontractor which furnished and installed the hotel's heating, ventilation, and air conditioning system ("HVAC" system). Components of the HVAC system

were allegedly manufactured by The Trane Company and by Climatemaster.

The construction of the hotel was completed in 1988, and the hotel suites were opened for occupancy at different times during that year. The plaintiffs alleged that the HVAC units installed in the hotel suites began to malfunction and fail in March 1988, and that 130 of the 226 HVAC units had to be replaced as of June 1989. According to the plaintiffs, thereafter the HVAC units continued to fail at a rate of two per week.

In January 1990, the plaintiffs filed in the Circuit Court for Montgomery County a multi-count complaint for damages against The Trane Company, Climatemaster, and an entity designated as "Deerfield, Incorporated." "Deerfield, Incorporated" was alleged to be the subcontractor which installed the HVAC system. The different counts in the complaint were based upon theories of breach of contract, negligence, breach of express warranty, breach of implied warranties, and strict tort liability for defective products. The money damages sought were for replacement or repair of components of the defective HVAC units, consultant fees expended to discover the causes of the failures in the HVAC units, repair of damage to the hotel suites caused by replacement or repair of, or water leaking from, the faulty HVAC units, loss of revenue from suites (allegedly averaging 14 per month) which were not useable as a result of the defective units, management time spent in customer relations and in attempting to correct the problems, and loss of goodwill. The plaintiffs also requested attorneys' fees and punitive damages.

The complaint in the 1990 action was served upon an existing corporation named "Deerfield, Incorporated." This corporation, however, was not the same corporation as "Deerfield Engineering, Inc.," which was the subcontractor that had installed the HVAC system in the hotel. In fact, there was no connection whatsoever between "Deerfield, Incorporated" and the HVAC subcontractor Deerfield Engineering. An order of default was entered against "Deerfield, Incorporated" in May 1992, and later a default judgment for $168,102.84 was entered

against "Deerfield, Incorporated." This default judgment became final on February 21, 1995, upon the dismissal of the action against Trane and Climatemaster. *See* Maryland Rule 2–602(a); *Quartertime Video v. Hanna*, 321 Md. 59, 580 A.2d 1073 (1990).

Sometime after the filing of the 1990 action, the plaintiffs apparently realized that the wrong "Deerfield" had been served. Consequently, in March 1991, the subcontractor Deerfield Engineering and its owner, Donald Paulgaard, were served with the pleadings in the 1990 lawsuit. It appears that Deerfield Engineering was then insolvent, and neither Deerfield Engineering nor Mr. Paulgaard filed an answer or any other pleading in the action. Nevertheless, the testimony in the present case disclosed that Mr. Paulgaard attended some of the trial court proceedings and cooperated with the plaintiffs.

The plaintiffs in May 1994 discovered that a general liability insurance policy had been issued by Harford Mutual Insurance Company to Deerfield Engineering covering the period during which the hotel had been constructed and the HVAC system installed. The "insured" is identified in the policy as follows:

"Deerfield Engineering
Donald Marvin Paulgaard
15 Dairyfield Court
Rockville, Md. 20852."

The plaintiffs' counsel, in June 1994, wrote to Harford, enclosed copies of the pleadings and orders in the 1990 lawsuit, offered to have the default judgment (which was not then final) vacated, and made a claim against the policy. An officer in Harford's claims department replied on June 30, 1994, stating that "there will be no coverage available to Deerfield Engineering for this occurrence. There are a number of coverage issues which contributed to this decision."

After some further correspondence between the plaintiffs' counsel and Harford, the plaintiffs on January 13, 1995, commenced the present action by filing in the Circuit Court for

Montgomery County a complaint for a declaratory judgment against Harford. The plaintiffs sought a judgment declaring that insurance policy coverage should be afforded Deerfield Engineering for the damages incurred by the plaintiffs arising from Deerfield's installation of the HVAC system in the hotel and declaring that Harford has a duty to defend Deerfield Engineering in the action instituted in 1990.

Harford defended on various alternative grounds, including the arguments that the defendant in the 1990 action was "Deerfield, Incorporated," whereas Harford's insured was "Deerfield Engineering," that the plaintiffs may not bring a direct action against the liability insurer of the defendant in the 1990 action because of the "plaintiffs' failure to present evidence of any attempt to execute upon the underlying [default] judgment," that Harford failed to receive timely notice of the plaintiffs' claim thereby justifying a denial of coverage, and that "the conduct and loss alleged in the underlying litigation is not covered under the Harford Mutual policy at issue." With respect to the last argument, Harford, after pointing out that the policy covers "property damage" caused by an "occurrence," contended that the injury or damages asserted in the underlying 1990 action were not "encompassed within the policy definition of 'property damage,'" that even if there were 'property damage' as defined in the policy, it was not "caused by an 'occurrence'" as that term is defined in the policy, and that, assuming *arguendo* the existence of property damage caused by an occurrence, "the conduct and damage at issue in the underlying case" fell within certain policy exclusions.

Following a denial of Harford's motion for summary judgment, the declaratory judgment action was tried nonjury in June 1995. After the testimony of the plaintiffs' witnesses and the introduction of documentary evidence, Harford moved for judgment. At the conclusion of arguments by counsel, the circuit judge orally ruled from the bench that Harford had timely notice of the claim. The judge did not expressly mention Harford's arguments that the plaintiffs were not entitled to bring a declaratory judgment action against the

insurer because they had sued the wrong "Deerfield" in 1990 and because they had allegedly not attempted to execute on the default judgment. The judge, however, implicitly rejected these arguments, taking the position that the policy coverage issues were determinative. The circuit judge then stated that a "careful perusal of both [the policy and the complaint in the 1990 action] persuades the Court that the coverage under the terms of the [insurance] contract would not afford the plaintiffs in this matter the coverage to which they have maintained they are entitled." The judge requested that counsel prepare and submit "an order."

Counsel for Harford initially submitted a six-page proposed memorandum order which would have constituted a declaratory judgment if the trial judge had signed it. The plaintiffs' counsel, however, objected to portions of the proposed memorandum order, and the trial judge declined to sign the proposed order. Subsequently, the trial judge simply signed a one-sentence order stating that Harford's "Motion for Judgment pursuant to Maryland Rule 2–519 ... is GRANTED."

The plaintiffs appealed, and the Court of Special Appeals affirmed in part, reversed in part, and remanded the case for further proceedings. *Woodfin v. Harford Mutual*, 110 Md. App. 616, 678 A.2d 116 (1996).

With regard to Harford's argument that the plaintiffs lacked standing to bring this declaratory judgment action against the insurer because the plaintiffs' default judgment was against "Deerfield, Incorporated—'a completely unrelated entity' ... [which] is not the 'named insured' under the CGL policy," the Court of Special Appeals stated that the "default judgment, although in the name of Deerfield, Incorporated, is a valid judgment against the insured." *Woodfin v. Harford Mutual, supra*, 110 Md.App. at 635, 678 A.2d at 125. After reviewing the facts, and specifically pointing out that the insured Deerfield Engineering and its owner Donald Paulgaard were served in 1991 with the pleadings in the underlying suit and had notice, the Court of Special Appeals concluded that this "is a case involving a mere 'misnomer'" and that,

therefore, the insured and the insurer "could not legally avoid the default judgment on the technical ground that the judgment is in the incorrect name." 110 Md.App. at 637, 678 A.2d at 126.

As to Harford's alternative standing argument, the Court of Special Appeals said (110 Md.App. at 632, 678 A.2d at 123): "We agree with appellee that, before an injured party may sue an insurer directly, the injured party must first obtain a judgment against the insured and that judgment must be returned unsatisfied, or the insured must refuse to pay it." The Court of Special Appeals relied on some of its prior cases, as well as on Maryland Code (1957, 1994 Repl.Vol.), Art. 48A, § 481.[1] Although agreeing with the legal principle put forward by the appellee Harford, the intermediate appellate court "reject[ed] appellee's argument that appellants lacked standing because they allegedly failed to enforce the judgment." 110 Md.App. at 638, 678 A.2d at 126. The appellate court reviewed the evidence presented at trial disclosing that the plaintiffs employed an investigator to search for the insured's assets but that no assets were found, that the insured's owner testified that all of the insured's assets had been disposed of, and that the insured was insolvent. The Court of Special Appeals concluded (*ibid.*):

"This evidence of total insolvency, in our view, is sufficient to satisfy the requirement that the judgment against the

---

1. Art. 48A, § 481, provides as follows:

   " **§ 481. Liability policy not to require assured to pay loss; bankruptcy or insolvency not to release insurer; action against insurer.**

   "No liability insurance policy issued in this State shall contain any requirement for the payment of liability or loss under the policy, by the assured, but all such policies shall provide in substance that the bankruptcy or insolvency of the assured shall not release the insurer from liability; that if an execution upon any final judgment against the assured is returned unsatisfied, in whole or in part, in an action brought by the injured or by another person claiming, by, through, or under the injured, then an action may be maintained by the injured, or by such other person against the insurer under the terms of the policy for the amount of any judgment recovered in such action, not exceeding the amount of the policy, and every such policy shall be construed to so provide, anything in such policy to the contrary notwithstanding."

insured must be returned unsatisfied, or that the insured must refuse to pay it, before the injured party may directly sue the insurer."

The Court of Special Appeals also rejected Harford's contention that the insurer was prejudiced by lack of timely notice, stating (110 Md.App. at 655, 678 A.2d at 135):

"Upon our review of the record, we hold that the circuit court was not clearly erroneous in determining that appellee was not prejudiced by the insured's failure to notify the insurer of appellants' claim or by its alleged failure to cooperate with appellee with respect to the claim."[2]

In addition, the Court of Special Appeals disagreed with the plaintiffs' argument that the circuit court based its decision of no coverage solely upon the complaint in the 1990 lawsuit and the provisions of the insurance policy, and that the court ignored the evidence adduced at trial. After reviewing the trial transcript, the intermediate appellate court held that it was "satisfied that the circuit court considered the evidence produced at trial in granting appellee's motion for judgment." 110 Md.App. at 647, 678 A.2d at 130–131.[3]

Turning to the merits of the coverage issues, the Court of Special Appeals expressed agreement with the plaintiffs' argument that the damaged and defective HVAC system constitut-

---

**2.** Harford's argument was based on Art. 48A, § 482, which states as follows:

" **§ 482. Disclaimer of coverage because of lack of notice or cooperation from insured.**

"Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer."

**3.** In connection with this issue, *see* this Court's recent opinions in *Sheets v. Brethren Mutual*, 342 Md. 634, 640 n. 2, 679 A.2d 540, 542 n. 2 (1996), and *Aetna v. Cochran*, 337 Md. 98, 107–112, 651 A.2d 859, 863–866 (1995).

ed "property damage" as defined in the general liability policy issued to Deerfield Engineering. 110 Md.App. at 648, 678 A.2d at 131. Nevertheless, the intermediate appellate court held that this property damage was not caused by an "occurrence" within the meaning of the policy, stating (*ibid.*):

"Courts uniformly hold that when property damage arising out of the insured's defective workmanship is confined to the insured's own work product, the damage is not caused by an 'occurrence' within the meaning of the CGL policy.

\* \* \* \* \* \*

"In light of the contract between appellants and the insured, there can be no doubt that the HVAC system, whether considered as a whole or in terms of its various component parts, is the work product of the insured."

Alternatively, the appellate court held that even if the damage to the HVAC system were within the policy's coverage provisions, such damage would fall within an exclusion for " 'property damage to the named insured's products' " which include " 'goods or products manufactured, sold, handled or distributed by the named insured.' " 110 Md.App. at 650, 678 A.2d at 132. Consequently, the Court of Special Appeals held that the plaintiffs are not entitled to recover under the policy for the costs of replacing or repairing components of the HVAC system, "for costs associated with tearing out walls, molding, and carpeting in order to repair and remove the HVAC units," and "for the economic costs of paying consultants, or the economic costs associated with loss of management time." 110 Md.App. at 649, 678 A.2d at 131–132.

On the other hand, the Court of Special Appeals held that the "loss of use of the guest suites ... is 'property damage' caused by an 'occurrence' under the CGL policy," that such loss is not within any of the policy exclusions, and that Harford "is obligated to cover the 'damages' associated with the loss of use of the guest suites." 110 Md.App. at 652, 678 A.2d at 133.

Harford filed in this Court a petition for a writ of certiorari, presenting the same standing, notice, and coverage issues

which it had raised in the two courts below. While agreeing with some of the Court of Special Appeals' rulings on the merits of the coverage issues, Harford specifically challenged the intermediate appellate court's holding that there was policy coverage for loss of use of the guest suites. The plaintiffs filed a cross-petition for a writ of certiorari, presenting the single question of

> "[w]hether the Court of Special Appeals erred in determining that plaintiffs' damages to the hotel structure and its heating, air conditioning and ventilation system were not covered by defendant's general liability insurance policy." [4]

## II.

This Court has granted both the petition and the cross-petition for a writ of certiorari. We shall summarily affirm in part and reverse in part the judgment of the Court of Special Appeals.

### A.

For the reasons delineated in the opinion of the Court of Special Appeals, we agree that the circuit court did not err in finding that Harford suffered no prejudice by an alleged lack of timely notice. Similarly, we agree with the Court of Special Appeals that the default judgment against "Deerfield, Incorporated" involved simply a misnomer situation, and that Harford cannot avoid the consequences of that judgment on the theory that the judgment is not technically in the name of Harford's insured, Deerfield Engineering. *See McSwain v. Tri–State Transportation,* 301 Md. 363, 369–371, 483 A.2d 43, 46–47 (1984); *Dart Drug Corp. v. Hechinger Co.,* 272 Md. 15, 28–29, 320 A.2d 266, 273–274 (1974); *W.U. Tel. Co. v. State, Use of Nelson,* 82 Md. 293, 306–308, 33 A. 763, 764 (1896); *First National Bank v. Jaggers,* 31 Md. 38, 46–48 (1869). *See*

---

**4.** The plaintiffs did not raise in their certiorari petition the argument, made in the Court of Special Appeals, that the circuit court, in rendering its decision on policy coverage, ignored the evidence at trial. Therefore this issue is not before us. *See* Maryland Rule 8–131(b)(1).

*also Greentree v. Fertitta,* 338 Md. 621, 625 n. 5, 659 A.2d 1325, 1327 n. 5 (1995).

### B.

We also agree with the decision of the Court of Special Appeals that the plaintiffs had standing to bring this declaratory judgment action against the liability insurer of one of the defendants in the underlying litigation. We disagree, however, with the legal principle advanced by Harford and accepted by the intermediate appellate court, and we disagree with the reasoning of that court.

Relying upon Art. 48A, § 481,[5] Harford maintains that an injured party may never bring a declaratory judgment or other action against the liability insurer of the person or entity causing the injury until "the injured party has (1) already obtained a judgment against the defendant/insured and (2) the judgment has been returned unsatisfied *after execution.*" (Harford's certiorari petition at 18, emphasis in original). The Court of Special Appeals in the present case essentially agreed with this principle, relying upon its earlier opinion in *Butler v. Liberty Mut. Ins. Co.,* 36 Md.App. 684, 375 A.2d 576 (1977). Harford's argument, as well as the view taken by the Court of Special Appeals in the present case and in *Butler v. Liberty Mut. Ins. Co., supra,* are directly inconsistent with the opinions of this Court.

With regard to Art. 48A, § 481, this Court has held that "[t]he statute ... does not purport to set forth the earliest time under Maryland law when a direct action may be maintained by the injured tort claimant against the defendant's liability insurer." *Washington Transit v. Queen,* 324 Md. 326, 332 n. 4, 597 A.2d 423, 425 n. 4 (1991). *See also Bass v. Standard Acc. Ins. Co.,* 70 F.2d 86, 87–88 (4th Cir.1934). The purpose of § 481, as shown by its plain language, was to prevent liability insurance companies from imposing certain requirements and relying upon certain defenses.

---

**5.** *See* footnote 1, *supra.*

■ As illustrated by our decisions, the principles regarding the circumstances under which direct actions can and cannot be brought against liability insurers, prior to the time when final judgments against insureds have been returned unsatisfied, have developed as a matter of case law. The controlling principle has been that public policy frowns upon the injection of liability insurance in legal proceedings at which the insured defendant's underlying tort liability is being determined; the "matter of liability insurance is irrelevant to the issue of the defendant's liability and is highly prejudicial." *Washington Transit v. Queen, supra,* 324 Md. at 332–333, 597 A.2d at 426, quoting *Morris v. Weddington,* 320 Md. 674, 680, 579 A.2d 762, 765 (1990). *See, e.g., Allstate Ins. Co. v. Atwood,* 319 Md. 247, 257–259, 264–265, 572 A.2d 154, 159, 162–163 (1990); *McCormick v. Church,* 219 Md. 422, 430–431, 149 A.2d 768, 773–774 (1959).

Consequently, we have sanctioned "declaratory judgment actions by or against the tortfeasor's liability insurer, in advance of a determination of liability in a tort suit, ... when the issues in the declaratory judgment action are independent and separable from the claims of the tort claimant," *Washington Transit v. Queen, supra,* 324 Md. at 333 n. 6, 597 A.2d at 426 n. 6. *Valliere v. Allstate Ins. Co.,* 324 Md. 139, 596 A.2d 636 (1991), involved a situation quite similar to that in the present case. In *Valliere,* while a tort suit was pending, the tort plaintiff brought a separate declaratory judgment action against the tort defendant's liability insurer to determine whether coverage existed under the terms of the liability insurance policy; this Court resolved the policy coverage issues on the merits, holding that the plaintiff was entitled to a declaratory judgment in her favor. *See also, e.g., Van Horn v. Atlantic Mutual,* 334 Md. 669, 672–673, 641 A.2d 195, 196–197 (1994) (declaratory judgment action to determine policy coverage, at which both the injured claimant and the tortfeasor's liability insurer were parties, brought prior to the filing of any underlying tort suit); *Bankers & Ship. Ins. v. Electro Enter.,* 287 Md. 641, 644, 415 A.2d 278, 280 (1980) (declaratory judgment action concerning insurance policy coverage for tort

claims, at which both the injured tort plaintiffs and the defendant's liability insurer were parties, brought shortly after the underlying tort action was filed).

Maryland public policy ordinarily does preclude an injured claimant from initially bringing a direct action against the alleged tortfeasor's liability insurer to litigate the matter of the insured's tort liability, as distinguished from a declaratory judgment action concerning separate and independent policy coverage issues. Nevertheless, even in an action by the injured claimant against the tortfeasor to determine the latter's tort liability, the defendant tortfeasor's liability insurer may become a party "after the jury's verdict or judge's decision on liability is rendered" and "the tort judgment [is] nonfinal," *Allstate Ins. Co. v. Atwood, supra,* 319 Md. at 264, 572 A.2d at 162. Contrary to the position of Harford and the Court of Special Appeals, the Maryland restriction upon direct actions against a defendant tortfeasor's liability insurer applies only "until there has been a determination of the insured's liability in the tort action. Once there is a verdict or judgment in the tort action, a direct action may be maintained against the liability insurer." *Washington Transit v. Queen, supra,* 324 Md. at 332, 597 A.2d at 426.

Therefore, it is not necessary that there be a final judgment against an insured tortfeasor, much less an execution on the judgment, before an injured claimant may bring an action against the tortfeasor's liability insurer.[6] Moreover, prior to any determination in the underlying tort case, the injured claimant ordinarily may bring a declaratory judgment action against the tortfeasor's liability insurer to resolve insurance policy coverage disputes which are separate and independent from the liability issues in the underlying litigation. In light of these principles, the plaintiffs in the case at bar clearly

---

**6.** It is noteworthy that, in the instant case, there was no final judgment against the insured until after the present declaratory judgment action was filed. Thus, if the legal principle applied by the Court of Special Appeals to this issue were correct, the plaintiffs were not entitled to file the declaratory judgment action when they did.

had standing to maintain this declaratory judgment action against Harford.

## C.

The opinion of the Court of Special Appeals with respect to the merits of the insurance policy coverage issues, and the certiorari petitions filed by both sides, fail to consider that this was a declaratory judgment action and that the circuit court did not render a declaratory judgment.

This Court has reiterated time after time that, when a declaratory judgment action is brought, and the controversy is appropriate for resolution by declaratory judgment, "the trial court must render a declaratory judgment." *Christ v. Department,* 335 Md. 427, 435, 644 A.2d 34, 38 (1994). "[W]here a party requests a declaratory judgment, it is error for a trial court to dispose of the case simply with oral rulings and a grant of ... judgment in favor of the prevailing party." *Ashton v. Brown,* 339 Md. 70, 87, 660 A.2d 447, 455 (1995), and cases there cited.

The fact that the side which requested the declaratory judgment did not prevail in the circuit court does not render a written declaration of the parties' rights unnecessary. As this Court stated many years ago, "whether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made." *Case v. Comptroller,* 219 Md. 282, 288, 149 A.2d 6, 9 (1959). *See also, e.g., Christ v. Department, supra,* 335 Md. at 435–436, 644 A.2d at 38 ("[t]he court's rejection of the plaintiff's position on the merits furnishes no ground for" failure to file a declaratory judgment); *Broadwater v. State,* 303 Md. 461, 467, 494 A.2d 934, 937 (1985) ("the trial judge should have declared the rights of the parties even if such declaration might be contrary to the desires of the plaintiff"); *East v. Gilchrist,* 293 Md. 453, 461 n. 3, 445 A.2d 343, 347 n. 3 (1982) ("where a plaintiff seeks a declaratory judgment ..., and the court's conclusion ... is exactly opposite from the plaintiff's contention, nevertheless

the court must, under the plaintiff's prayer for relief, issue a declaratory judgment"); *Shapiro v. County Comm.,* 219 Md. 298, 302–303, 149 A.2d 396, 399 (1959) ("even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree").

The circuit court's judgment in this case, insofar as it related to the merits of the insurance policy coverage issues, should have been vacated by the Court of Special Appeals for failure of the circuit court to file a written declaration with regard to the disputed coverage issues. The intermediate appellate court should not have reached the merits of those coverage issues, and we shall not do so. We reverse that portion of the Court of Special Appeals' judgment relating to the merits of the policy coverage issues and relating to the instructions for the circuit court upon remand.

Upon remand, the circuit court should render a written declaratory judgment on the merits of the disputed insurance policy coverage issues. We note that, if an appeal is taken from the circuit court's declaratory judgment, any party is entitled to file in this Court a petition for a writ of certiorari prior to briefing and argument in the Court of Special Appeals. *See* Code (1974, 1995 Repl.Vol.), § 12–201 of the Courts and Judicial Proceedings Article.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE DIVIDED EQUALLY BETWEEN THE TWO SIDES.*