762 A.2d 974

**Margaret A. ROSS**

**v.**

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 2476, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 29, 2000.

Alane Tempchin (Gary Howard Simpson, on the brief), Bethesda; Hamilton P. Fox, III and Sutherland, Asbill & Brennan, LLP, Washington, DC, of counsel, for Appellant.

Deborah K. St. Lawrence (Thurman W. Zollicoffer, Jr., City Sol., on the brief), Baltimore, for Appellees.

Argued before SALMON, EYLER and MARVIN H. SMITH, (Ret., Specially Assigned), JJ.

SALMON, Judge.

Appellant, Margaret Ross, up until June 28, 1996, was a "City Planner Supervisor" in the Baltimore City Department of Planning. She had worked for the City for fourteen years as of June 28, 1996, when she lost her job through no fault of her own.

Ms. Ross had a right, guaranteed by the City's Charter and the rules of the Civil Service Commission, to have her name placed on a re-employment list and to be rehired (in order of seniority) as a City Planner Supervisor if, within one year of the date of her discharge, the City filled a vacancy for the position of City Planner Supervisor. Ms. Ross's name was placed on the re-employment list, and as far as is shown by the record, she had the most seniority of any former City Planner Supervisor on that list. Ms. Ross was not, however, re-hired by the City within one year of her discharge, and her name was thereafter taken off the re-employment list.

The central question to be resolved in this case is whether, within one year from the date Ms. Ross lost her job, the City filled a vacancy for the position of City Planner Supervisor. If the City did fill a vacancy, it would appear, at least from the

material presented to the motion's court, that Ms. Ross was entitled to be hired for that vacancy. The City maintains that it did not fill such a vacancy and, accordingly, maintains that it had no obligation to re-hire Ms. Ross.

## I. BACKGROUND FACTS [1]

Article VII, section 100(b), of the Baltimore City Charter provides:

Each person discharged for the purpose of reducing the force and without fault shall receive a certificate so stating and all persons so discharged shall be placed on the eligible list in the order of the length of their service in their classifications at the time of being laid off.... Persons so discharged shall have preference in the order of their seniority over others on the eligible list....

The rules of the Civil Service Commission for the City spell out the rights of employees who have been discharged "through no fault of their own." Civil Service Rule 52C reads:

Whenever it becomes necessary to reduce the work force in any organizational unit because of lack of work or lack of funds, the appointing officer shall notify the Department [of Personnel] of the names and classifications of the affected employees for the purpose of entering their names on appropriate re[-]employment lists as provided in Rule 39, and shall furnish each person so laid off or removed with a certificate to that effect, as required by Section 102 of the City Charter.

Civil Service Rule 29A states:

For initial appointments, the Personnel Director shall first certify to the appointing officer from the appropriate re-employment list the names of persons, equal in number to the positions to be filled, who have been laid off pursuant to

---

1. The facts set forth in Part I of this opinion are written in the light most favorable to appellant, the non-prevailing party below. *See Tennant v. Shoppers Food Warehouse Md. Corp.,* 115 Md.App. 381, 386, 693 A.2d 370 (1997).

the provisions of Rule 52. All names shall be selected or removed from a re[-]employment list for a class before any selections may be made from an employment list for the same class.

Certifications for promotions to a class for vacancies in an organizational unit in which a layoff occurred may not be made while the re-employment list for that class contains the names of eligibles from that organizational unit. Certifications for promotions to the class for vacancies in other organizational units may be made only if no new or additional names were placed on the re-employment list within the 90 days prior to the date of request for certification.

Lastly, Civil Service Rule 39 reads, in pertinent part:

B. The names of persons laid off in accordance with Rule 52 shall be placed on the re-employment list for the appropriate class in the order of the length of their service in their classifications at the time of being laid off and in other classifications in the Classified Civil Service in which they may have served previously.

\* \* \*

C. Persons laid off under Rule 52 shall have absolute preference in re-employment, in the order of their standing on the re-employment list, when certified for the class in accordance with the provisions of Rule 29 and shall not be required to serve a probationary period upon re-employment in their former organizational unit.

Because of the provisions quoted above, Ms. Ross's name was placed on a re-employment list for the position of "City Planner Supervisor" on June 28, 1996. In the one-year period that passed while Ms. Ross's name was on the re-employment list, four positions of City Planner Supervisor became vacant. One of those positions indisputably remained vacant for one year and therefore does not concern us. Whether any of the other three City Planner Supervisor positions remained vacant was disputed by the parties, but for our purposes it is neces-

sary to discuss only what occurred in regard to two of the three vacancies.[2]

On July 30, 1996, Raymond Bird retired from the City's Department of Planning. The position vacated by Bird remained empty until November 1996 when Gloria Griffin, an employee formerly under Mr. Bird's supervision, was asked to serve as Acting City Planner Supervisor. She was also asked to perform all the functions previously performed by Mr. Bird.

Before the City asked Ms. Griffin to perform the duties of a City Planner Supervisor, the City did not first try to hire a replacement for Mr. Bird from the re-employment list. Instead, it relied on a provision of the City's Administrative Policy Manual referred to as the "in lieu of provision," which reads:

> An agency may fill a vacant position with an employee whose job class is not the same as the class of the vacant position if such action will allow the individual to gain the necessary experience to qualify for the class. To be eligible, the employee's class and the class of the vacant position must be in the same class series. (For example, a Senior Clerk position may be filled with a Clerk "in lieu" of a Senior Clerk.)

A little over two months after Ms. Ross's name was removed from the re-employment list, on September 8, 1997, Ms. Griffin was promoted to the position of City Planner Supervisor.

The promotion of Laurie Feinberg, an employee of the Department of Planning, followed a path almost identical to the one traversed by Ms. Griffin. Ms. Feinberg's supervisor, Donald Duncan, retired as City Planner Supervisor on July 30,

---

**2.** The third vacancy arose on June 28, 1996–the same day that appellant was laid off–when Israel Patoka was voluntarily laid off as a City Planner Supervisor. On March 27, 1997, the City hired one Kyle Legg as a City Planner I. It is not completely clear whether Legg replaced Mr. Patoka as a City Planner Supervisor. It is unnecessary, however, to struggle with that issue because the manner that the City handled the other two vacancies is both clear cut and outcome determinative.

1996. About three months later, again in November of 1996, Ms. Feinberg was asked to perform the functions Mr. Duncan had previously performed. She performed the duties of a City Planner Supervisor, albeit without benefit of the formal title or pay, until September 8, 1997, when she was formally promoted to the position of City Planner Supervisor.

On August 13, 1998, Ms. Ross filed suit in the Circuit Court for Baltimore City, naming her former employer, the Mayor and City Council of Baltimore, as a defendant. Ms. Ross alleged that under the City's Charter, as well as under applicable civil service rules, she had a right to be re-hired as a City Planner Supervisor, but that the City, rather than re-hiring her, had transferred or reassigned existing lower ranking employees into the vacant City Planner Supervisor position. Ms. Ross further alleged that the City, by its failure to re-hire her, denied her rights guaranteed under Articles 19 and 24 of the Maryland Declaration of Rights. She prayed for the following relief:

> a. For the declaration of her rights and reinstatement in her position;
>
> b. For front and back pay;
>
> c. For interest and the costs of this action;
>
> d. For such other and further relief as this court deems appropriate.

The City filed a motion for summary judgment that was supported by a memoranda that underscored the point that whether the City's motion had merit depended on the truth of two (alleged) facts: (1) between June 28, 1996 (when Ms. Ross was placed on the re-employment list) and June 28, 1997, "there were no City Planner Supervisor Vacancies"; (2) the persons who ultimately were hired as City Planner Supervisors were not hired for the supervisor position until after June 28, 1997, when Ms. Ross was no longer on the list. The City concluded its trial memoranda with these words:

> The Department of Personnel has sole discretion in the maintenance of a re-employment list and, in this case, dutifully performed its responsibilities to the [p]laintiff.

That no jobs became available during the one year period is not actionable. Nor does the [p]laintiff have any remedy because the City promoted two City employees to City Planner Supervisor after June 30, 1997. The [p]laintiff has failed to present a *prima facie* case alleging any improper purpose, or establish any evidence of a constitutional denial or City Charter proscription, which would have impeded her re-employment.

Ms. Ross filed an opposition to the City's motion, as well as a cross motion for summary judgment. Her opposition and cross motion were supported by her own affidavit, as well as by excerpts from the depositions of Ms. Griffin, Ms. Feinberg, and others. The central point advanced by Ms. Ross in her opposition memorandum was that during the year she was on the re-employment list three positions of City Planner Supervisor became vacant and were later filled by existing City employees "in lieu of promotion." She contended that filling the vacancies in this matter violated the clear and unambiguous provisions of the City's Charter and the rule of the Civil Service Commission.

A hearing on the pending motions was held in the Circuit Court for Baltimore City on December 3, 1999. At the hearing, counsel for the City made a brief oral argument in which he asserted that the "case boils down to the fact" that while Ms. Ross was on the re-employment list the vacant position of City Planner Supervisor "was not filled by anyone."

## II. *THE MOTIONS JUDGE'S RULING*

In making her ruling, the motions judge said that two facts were undisputed, *viz:* (1) that Ms. Ross was on the re-employment list from June 28, 1996, to June 28, 1997, and (2) that, if the City hired a City Planner Supervisor during that period, Ms. Ross would have been at the top of the list. During argument, the trial court made clear that she accepted the validity of the City's argument that the position of City Planner Supervisor was not filled while Ms. Ross was on the re-employment list. She orally delivered her decision and the rationale for it:

What happened in each one of those instances was that the City, instead, placed someone in the position in lieu of, following, I guess, the administrative manual policy that is set out in 231–1, which states that, "An agency may fill a vacant position with an employee whose job class is not the same as the class of the vacant position if such action will allow the individual to gain the necessary experience to qualify for the class. To be eligible, the employee's class and the class of the vacant position must be in the same class series."

Additionally, that policy states what is prohibited. And explicitly it states that, "It is prohibited to fill a vacant position with an employee whose job class is in the same class series as the vacant position and has a salary range which is higher than the budgeted position."

So what that meant is that, if the City was going to be filling the positions in lieu of, the plaintiff did not qualify to fill the positions in lieu of.

And the plaintiff has stated, and I think correctly so, that that's not really what her goal was. Instead, her goal was to be hired as a City Planner Supervisor, which is understandable.

However, essentially what that means is that the plaintiff is saying that the City was required to fill the position with the City Planner Supervisors and was prohibited, as a matter of law, from filling them in lieu of. And that's not my understanding of what the Charter and the Civil Services rules provide, a requirement that the City fill positions and not use in lieu of. It just simply does not exist.

So for all of those reasons, I am going to grant the City's motion for summary judgment, which, of course, means that the plaintiff's motion for partial summary judgment will be denied. So I'll sign an order to that effect.

(Emphasis added.)

The underlined portion of the court's oral opinion referred to a portion of the Administrative Policy Manual, which sets forth "Prohibited Actions":

The following personnel actions are prohibited and will not be approved under any circumstances:

- Filling a vacant position with an employee whose job class is in the same class series as the vacant position, but has a salary range which is higher than the budgeted position, (for example, filling a vacant Clerk position with a Senior Clerk "in lieu" of a Clerk). . . .

### III. *ANALYSIS*

 The trial judge erred in granting summary judgment in this case without rendering a *written* opinion spelling out the rights of the parties. As the Court of Appeals recently said in *Maryland Association of HMO's v. Health Services Cost Review Commission,* 356 Md. 581, 741 A.2d 483 (1999):

The plaintiffs in this action sought a declaratory judgment, and the issues under counts 1, 3, and 4 were appropriate for a declaratory judgment. The circuit court, however, filed no written declaratory judgment and filed no written opinion which could be treated as a declaratory judgment. In this regard, the circuit court committed error.

*Id.* at 603, 741 A.2d 483; *see also Harford Mutual Ins. Co. v. Woodfin Equities Corp.,* 344 Md. 399, 414, 687 A.2d 652 (1997) ("[W]here a party requests a declaratory judgment, it is error for a trial court to dispose of a case simply with oral rulings and a grant of . . . judgment in favor of the prevailing party.") (quoting *Ashton v. Brown,* 339 Md. 70, 87, 660 A.2d 447 (1995)).

In *Woodfin,* the Court of Appeals explained:

The fact that the side which requested the declaratory judgment did not prevail in the circuit court does not render a written declaration of the parties' rights unnecessary. As this Court stated many years ago, "whether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made." *Case v. Comptroller,* 219 Md. 282, 288, 149 A.2d 6, 9 (1959). *See also, e.g., Christ v. Department [of Natural Resources],*

*supra,* 335 Md. [427] at 435–436, 644 A.2d [34] at 38 [(1994)] ("[t]he court's rejection of the plaintiff's position on the merits furnishes no ground for" failure to file a declaratory judgment); *Broadwater v. State,* 303 Md. 461, 467, 494 A.2d 934, 937 (1985) ("the trial judge should have declared the rights of the parties even if such declaration might be contrary to the desires of the plaintiff"); *East v. Gilchrist,* 293 Md. 453, 461 n. 3, 445 A.2d 343, 347 n. 3 (1982) ("where a plaintiff seeks a declaratory judgment . . ., and the court's conclusion . . . is exactly opposite from the plaintiff's contention, nevertheless the court must, under the plaintiff's prayer for relief, issue a declaratory judgment"); *Shapiro v. County Comm. [Com'rs],* 219 Md. 298, 302–303, 149 A.2d 396, 399 (1959) ("even though the plaintiff may be on the losing side of the dispute, if he states the existence of a controversy which should be settled, he states a cause of suit for a declaratory decree").

*Woodfin,* 344 Md. at 414–15, 687 A.2d 652 (1997).

Because no written declaration of rights has been filed, this case must be remanded. We include the following comments for the guidance of the circuit court.

The motions court's reliance on the "Prohibited Actions" provision of the Administrative Policy Manual (quoted above) was misplaced. There is nothing in the record to show that Ms. Ross's "job class" had a "higher salary range" than the range budgeted for a City Planner Supervisor. Nothing in the Administrative Policy Manual prohibited Ms. Ross from being named as a City Planner Supervisor if the City elected to fill that vacancy while she was on the re-employment list.

■ The court's second ground for granting summary judgment in favor of the City was that the trial judge believed that by utilizing the "in lieu of" provision in the Administrative Policy Manual, the City successfully kept the City Planner Supervisor position vacant while Ms. Ross was on the re-employment list. It is also upon this ground that the City placed primary reliance in its brief. According to the City, "Appellant was never rehired by the City because the City did

not fill the position of City Planner Supervisor during ... [the one year] period [that Ms. Ross was on the list]."

It makes no sense to argue, as the City does, that on the one hand the City could utilize the "in lieu of" clause when positions became vacant and, on the other hand, contend that the City never filled the City Planner Supervisor position. By its plain and unambiguous terms, the "in lieu of" clause *only* comes into play when the City elects to *fill a vacancy.* As mentioned previously, the "in lieu of" clause reads: "An agency *may fill a vacant position* with an employee whose job class is not the same as the class of the vacant position if such action will allow the individual to gain the necessary experience to qualify for the class ... (for example, a Senior Clerk position may be filled with a Clerk 'in lieu of' a Senior Clerk)." (Emphasis added.) In other words, if the City Planner Supervisor position was indeed kept vacant, the "in lieu of" provision of the Administrative Policy Manual would have no possible relevance to this case.

In the motions court, it was undisputed that the City used the "in lieu of" clause to temporarily move Ms. Griffin and Ms. Feinberg into City Planner Supervisor spots that previously were held by persons with the title of City Planner Supervisor. Although Ms. Griffin and Ms. Feinberg were not immediately given either the pay or the title of City Planner Supervisor, they both fulfilled the duties of that position. Under these circumstances, it is illogical to say that a position remains "vacant" simply because no one has assumed formal title to that position.

We therefore hold that the trial court erred in granting summary judgment on the basis that the City did not fill any vacancies in the job of City Planner Supervisor during the period Ms. Ross was on the re-employment list.

In her brief, Ms. Ross stresses (1) that the Baltimore City Charter is the supreme law of the City; (2) that with exceptions not here relevant all employees are required to be members of the civil service; (3) that appointments to any jobs in the City are to be made in accordance with the

provisions of Article VII, Section 99, of the City Charter, which deals with civil service; (4) that the Civil Service Commission is authorized by the Charter to review and apply rules proposed and submitted to the Department of Personnel, and (5) that rules written and duly promulgated by the Civil Service Commission cannot be "trumped" by provisions of the Administrative Policy Manual, which are merely policy statements by the agency.

On a theoretical basis, we agree with appellant that, if there is a conflict, provisions of the Administrative Policy Manual do not "trump" the provisions of the rules set down by the Civil Service Commission.[3] We believe, however, that the "in lieu of" clause and the Civil Service Commission rules can be read in harmony. Under the Civil Service Commission rules, a person on the re-employment list for a vacant position takes absolute priority over all other applicants for that position. If a job is vacant and there are no names on the re-employment list for that position, the City may fill the vacant position by utilizing the "in lieu of" clause set forth in the Administrative Policy Manual; but if, as in the case *sub judice,* an individual is at the top of the re-employment list for a vacant position and *if* the City elects to fill that vacant position, then the City must follow its Charter and Civil Service Commission rules and fill the vacancy by giving the most senior person on the re-employment list an absolute priority.

In its brief, the City raises an argument that was not raised below. The City contends:

Neither the Charter nor the Civil Service Rules mandate that the City must only staff vacant positions through permanent placements. Indeed, the Civil Service Rules

---

**3.** The City does not argue otherwise. The City says in its brief:

Pursuant to the Charter, [a]ppellant was entitled to preference in hiring if and when the City decided to fill a City Planner supervisor position for a similar position between June 28, 1996, and June 28, 1997. The Civil Service Rules echo this preferential treatment for the stated position.

specifically contemplate that the City may temporarily appoint a person to a position when "permanent funding for the position is not available." As explained above, the City abolished [a]ppellant's position on June 28, 1996 because of lack of funding.

The Civil Service Commission rule (Rule 36B) relied upon by the City in the just-quoted argument reads as follows:

B. A temporary appointment may be made to a Civil Service position when the position is expected to be abolished, or when permanent funding for the position is not available. Whenever such a temporary appointment is requested, the Personnel Director may grant authority for such appointment for a period not to exceed one year, provided that persons appointed for more than 30 days must meet the minimum qualifications for the classification.

If a Civil Service position that is filled temporarily is not abolished within one year or if funding is made available beyond one year, then the Director shall proceed to certify an appropriate eligible list for permanent appointment or may authorize a temporary appointment in accordance with part (A) of this Rule above.

Rule 36B has no relevancy to this case—at least no relevancy based on the material presented to the motions court. There was no evidence presented to the motions court that showed that it was expected that the vacant City Planner Supervisor position filled by Ms. Griffin or the position filled by Ms. Feinberg were positions "expected" to be abolished or that permanent funding was not available for those position. And, by the plain terms of section 36B, it makes no difference whatsoever if the City is correct when it says that Ms. Ross's position was abolished "because of [a] lack of funding." [4]

On remand, the City will have the opportunity to present evidence, if it has any, that section 36B is applicable.

---

4. In any event, it is by no means clear, based on the material in the record, that lack of funding was in fact the reason appellant lost her job through no fault of her own-it may have been due to a lack of need.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.**