779 A.2d 380

**MAYOR AND CITY COUNCIL OF BALTIMORE**

v.

Margaret A. ROSS.

No. 142, Sept. Term, 2000.

Court of Appeals of Maryland.

Sept. 10, 2001.

352

Deborah K. St.Lawrence, Associate City Sol. (Thurman W. Zollicoffer, Jr., City Sol., on brief), Baltimore, for petitioner.

Melvin J. Sykes, Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, Judge.

The issue before this Court involves the propriety of a trial court's grant of summary judgment in favor of the Mayor and City Council of Baltimore (hereinafter "the City") in a suit brought by former City employee, Margaret Ross, alleging an unconstitutional deprivation of her re-employment rights pursuant to the Baltimore City Charter and Baltimore City Civil Service Commission Rules. The City challenges the decision of the Court of Special Appeals which reversed the trial court's grant of summary judgment in the City's favor. We affirm the decision of the Court of Special Appeals and hold that summary judgment was erroneously granted because the trial court misinterpreted the applicable City mandates regarding Ross's re-employment rights and because there exists a dispute of material fact as to whether the position for which Ross was placed on the re-employment list was filled by another employee in violation of the guarantees provided civil service employees.

## I. Background

### A. Facts

Margaret Ross was employed by the Baltimore City Department of Planning from June 14, 1982 until June 28, 1996, when she was laid off because her position as City Planner

Supervisor was to be abolished, ostensibly due to budget constraints for the upcoming fiscal year.

Because Ross was a civil service employee, the Baltimore City Charter (hereinafter "Charter") and the Baltimore City Civil Service Commission Rules (hereinafter "Civil Service Rules") granted Ross placement on a re-employment list for one year. The re-employment list guaranteed Ross absolute preferential hiring status for positions, for which she was similarly qualified, that became vacant within one year of her termination. Section 100(b) of the Charter specifically provides that:

"[e]ach person discharged for the purpose of reducing the force and without fault shall ... be placed on the eligible list ... [and] shall have preference in the order of their seniority over others on the eligible list...."

Baltimore City Charter, Art. VII § 100(b). Rule 39C of the Civil Service Rules further qualifies that, "persons laid off ... shall have absolute preference in re-employment...." Pursuant to these provisions, Ross was issued a notice stating that she was placed on the re-employment list for a City Planner Supervisor position, and as required, Ross remained on this list for one year, until June 28, 1997.

The central issue of Ross's complaint is that, while she was on the re-employment list, the City refused to re-employ Ross in any of the four vacant City Planner Supervisor positions,[1] thus violating her constitutionally protected proprietary interest in the position pursuant to her statutorily guaranteed re-employment rights.[2]

---

**1.** One of those positions indisputably remained vacant for the entire year in question; as the issue before us involves Ross' *re-employment* rights, this vacancy does not concern us.

**2.** While Ross raises a constitutional issue, the case can be resolved under the Baltimore City Charter and Baltimore City Civil Service Rules. When a case can be properly disposed of on non-constitutional grounds, we decline to reach the constitutional issues. *See State v. Lancaster,* 332 Md. 385, 404 n. 13, 631 A.2d 453, 463 n. 13 (1993). *See also Mercy Hosp., Inc. v. Jackson,* 306 Md. 556, 565, 510 A.2d 562, 566

One of the positions became vacant when City Planner Supervisor, Israel C. Patoka, was voluntarily laid off on the same day that Ross was discharged. Ross contends that, prior to her termination, she had requested several times to be transferred to fill Patoka's position, but that her requests were denied. Yet, on July 1, 1996, the first workday after Patoka and Ross were discharged, Amy Hasson, the Executive Assistant to the Director of Planning, requested that the Department of Personnel evaluate applicants for a City Planner Supervisor position through the City's examination process. Notably, the type of examination that Hasson requested was an "open" examination, i.e. one open for the public. In spite of the Department of Personnel's advisement to the City that it must use the re-employment list, an announcement for an open examination for a City Planner Supervisor position was posted on August 26, 1996.

The position remained vacant until March 24, 1997 when the City hired Kyle Leggs to fill it. Both the City and Mr. Leggs himself state that he was hired as a City Planner I, a position with a lower rate of pay and lesser duties and responsibilities than required for a City Planner Supervisor, the position for which Ross was on the re-employment list; however, the Budget Detail Sheets published by the Bureau of Budget and Management Research indicate that Leggs filled the position for City Planner Supervisor, job # 187–16585, which was Patoka's position. The Budget Detail Sheets also indicate that Leggs was hired as a City Planner Supervisor "in lieu," a term that will be addressed in further detail below.

Two other City Planner Supervisors, Donald D. Duncan, job # 187–16598, and Ray N. Bird, job # 187–16579, retired on July 30, 1996, a month after Ross was discharged. These positions remained vacant until November 1996, when Laurie Feinberg and Gloria Griffin were asked to serve as Acting City Planner Supervisors, i.e. to perform all the functions previously performed by Mr. Duncan and Mr. Bird, respec-

---

(1986) (stating that "this Court's established policy is to decide constitutional issues only when necessary") (citation omitted).

tively. The City relied on a provision in the Baltimore City Administrative Manual (hereinafter "Administrative Manual") referred to as the "in lieu of" provision, which states:

> An agency may fill a vacant position with an employee whose job class is not the same as the class of the vacant position if such action will allow the individual to gain the necessary experience to qualify for the class. To be eligible, the employee's class and the class of the vacant position must be in the same class series. (For example, a Senior Clerk position may be filled with a Clerk "in lieu" of a Senior Clerk.).[3] Baltimore City Administrative Manual, AM–231–1.

The Budget Detail Sheets for November 29, 1996 indicate that Feinberg transferred out of her City Planner II position into the City Planner Supervisor position (# 187–16598) "in lieu." This position was classified as a "budgeted position" that was no longer a "vacancy." The same Budget Detail Sheets also indicate that Griffin had transferred out of her City Planner III position into the City Planner Supervisor position (# 187–16579) "in lieu." Griffin further testified that out-of-title pay was given to her for acting as City Planner Supervisor.

In September 1997, two months after Ross's re-employment preference expired, Griffin and Feinberg were formally promoted to City Planner Supervisors.

### B. Legal Disposition

Ross filed suit for a declaratory judgment, an injunction and money damages against the City on July 29, 1998 in the Circuit Court for Baltimore City. Ross alleged that, pursuant to the City's Charter and Civil Service Rules, she had a right to be re-employed as a City Planner Supervisor and was deprived of this right when the City reassigned existing lower ranking employees into vacant City Planner Supervisor positions. This deprivation, Ross alleges, violated her rights

---

**3.** Ross's class was City Planner Supervisor and her class series was City Planner, which includes City Planner I–III, Staff Planner, and City Planner Supervisor.

guaranteed under Articles 19 and 24 of the Maryland Declaration of Rights.[4]

The City and Ross filed cross motions for summary judgment. The City argued that, throughout the year in which Ross was on the employment list, a City Planner Supervisor position never became available, i.e. the positions remained vacant; therefore, Ross was not, as a matter of law, denied any constitutionally protected proprietary interest in the position.

Ross sought partial summary judgment on the issue of liability, arguing that it was undisputed that she had absolute preference for re-employment during the year following her lay-off and that the City, on three occasions, filled City Planner Supervisor slots with other employees "in lieu of" promotion during the time period in question.

All motions for summary judgment were heard on December 3, 1999 in the Circuit Court for Baltimore City. The Circuit Court denied Ross's motion for partial summary judgment and ordered summary judgment for the City. Relying on the Administrative Policy Manual,[5] the trial court ruled that

---

**4.** Article 19 of the Maryland Declaration of Rights provides: "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land."

Article 24 of the Maryland Declaration of Rights provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

**5.** As mentioned in the text above, the City's Administrative Manual provides that to be eligible for an "in lieu of" assignment "the employee's class and the class of the vacant position must be in the same class series. (For example, a Senior Clerk position may be filled with a Clerk "in lieu" of a Senior Clerk.)." Baltimore City Administrative Manual, AM 231–1.

The policy further states that an agency is prohibited from filling "a vacant position with an employee whose job class is in the same class series as the vacant position, but has a salary range which is higher than the budgeted position." *Id.*

the City was permitted to appoint others "in lieu of" City Planner Supervisors and because the City was only "going to be filling the positions in lieu of, the plaintiff [Ross] did not qualify to fill the positions in lieu of."

Ross appealed the decision of the trial court to the Court of Special Appeals. The Court of Special Appeals, in a reported opinion, reversed the ruling of the lower court and remanded the case to the Circuit Court for Baltimore City for further proceedings. *Ross v. Mayor & City Council of Baltimore*, 135 Md.App. 370, 762 A.2d 974 (2000). Concluding that the trial court erred in finding that the appointment of a person as a City Planner Supervisor "in lieu of" successfully kept the City Planner Supervisor position vacant while Ross was on the re-employment list, the Court of Special Appeals held that the trial court's grant of summary judgment on the basis that the City did not fill any vacancies was legally erroneous.[6] *Id.* at 381, 762 A.2d at 979–980.

The City petitioned for, and this Court granted, a writ of certiorari on the issue of whether the Court of Special Appeals erroneously interpreted the statutory and regulatory personnel scheme of Baltimore City, and thus erred in reversing the trial court's grant of summary judgment for the City.

---

**6.** The Court of Special Appeals also remanded the case to the Circuit Court for Baltimore City because the trial court failed to issue a written declaration of rights. As the Court of Special Appeals correctly acknowledged, this Court repeatedly has stated that where a plaintiff seeks a declaratory judgment, the trial court must file a written declaratory judgment or written opinion which could be treated as a declaratory judgment. *See Maryland Association of HMO's v. Health Services Cost Review Commission*, 356 Md. 581, 603, 741 A.2d 483, 494–95 (1999); *see also Ashton v. Brown*, 339 Md. 70, 87, 660 A.2d 447 (1995) (stating that "[w]here a party requests a declaratory judgment, it is error for a trial court to dispose of the case simply with oral rulings and a grant of ... judgment in favor of the prevailing party"). A trial court must issue a declaratory judgment, even if the court's conclusion is contrary to the plaintiff's contention, *see Harford Mutual Ins. Co. v. Woodfin Equities Corp.*, 344 Md. 399, 414, 687 A.2d 652, 659 (1997); *Broadwater v. State*, 303 Md. 461, 467, 494 A.2d 934, 937 (1985); *East v. Gilchrist*, 293 Md. 453, 461 n. 3, 445 A.2d 343, 347 n. 3 (1982); therefore, the trial court's oral ruling was inadequate.

## II. Standard of Review

The propriety of the trial court's grant of summary judgment in favor of the City is at issue in this case. Maryland Rule 2–501(e) expressly provides that a trial judge may grant summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that party in whose favor judgment is entered is entitled to judgment as a matter of law." In making that determination, the evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to the nonmoving party. *See Jones v. Mid–Atlantic Funding Co.,* 362 Md. 661, 676, 766 A.2d 617, 625 (2001) (quoting *Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 62, 485 A.2d 663, 671 (1984)).

We have emphasized that the summary judgment process is not a substitute for trial, *see Goodwich v. Sinai Hosp. of Baltimore, Inc.,* 343 Md. 185, 205, 680 A.2d 1067, 1077 (1996), but rather the purpose of the summary judgment process is to determine whether there exists "an issue of fact, which is sufficiently material to be tried." *Jones v. Mid–Atlantic Funding Co.,* 362 Md. 661, 675, 766 A.2d 617, 624 (2001); *Frederick Road Ltd. Partnership v. Brown & Sturm,* 360 Md. 76, 93, 756 A.2d 963, 972 (2000). "A material fact is a fact the resolution of which will somehow affect the outcome of the case." *Jones v. Mid–Atlantic Funding Co.,* 362 Md. at 675, 766 A.2d at 624 (quoting *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608, 614 (1985)).

Thus, an appellate court's review of the grant of summary judgment involves the determination whether a dispute of material fact exists, *Williams v. Mayor & City Council of Baltimore,* 359 Md. 101, 113, 753 A.2d 41, 47 (2000); *Gross v. Sussex, Inc.,* 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993); *Beatty v. Trailmaster Products,* 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993), and "whether the trial court was legally correct." *Williams,* 359 Md. at 113, 753 A.2d at 47–48 (quoting *Goodwich,* 343 Md. at 204, 680 A.2d at 1076).

### III. Discussion

It is undisputed that Ross was a City Planner Supervisor in the Baltimore City Department of Planning and that as a member of the civil service, Ross had an absolute preference for re-employment during the year following her lay-off. It is also undisputed that other employees were reassigned to City Planner Supervisor positions pursuant to the "in lieu of" provision of the City Administrative Manual. A material dispute does exist, however, as to whether the City Planner Supervisor positions were "filled" once the other employees were reassigned "in lieu of." This decisional issue requires both factual findings, e.g. was the City Planner Supervisor position a budgeted position for the fiscal years in question and did it remain an independently budgeted position after the "in lieu of" appointments, and correct application of legal provisions in the City's Charter, Civil Service Rules, and Administrative Manual.

We conclude that a material factual dispute existed on the record of this case, at the time summary judgment was granted. Ross argues that when Leggs, Griffin and Feinberg were temporarily assigned as City Planner Supervisors, those positions became filled and were no longer vacant. Ross points to the Budget Sheets which indicate that, prior to this assignment, the City Planner Supervisor Positions were held to be "vacancies," and after the assignment, the positions were no longer deemed vacancies.

The City, on the other hand, argues that the City Planner Supervisor positions remained vacant until Griffin and Feinberg were formally promoted to the position in September 1997, two months after Ross's preference had expired. The City claims that the "in lieu of" policy was promulgated as a means of achieving full coverage of the positions while using fewer employees, and as a means of ensuring that the City effectively operated within its budget. According to the City, the "in lieu of" employees maintained their status as City Planners while assuming some of the duties of the City Planner Supervisors.

The City also now contends that the Civil Service Rule 36B permits temporary appointments when "the position is expected to be abolished, or when permanent funding for the position is not available." The City claims that budgetary reasons prevented them from re-hiring Ross.[7] This assertion was not proffered before the trial court during the motions hearing and no evidence was presented to demonstrate that the vacant City Planner Supervisor positions were positions that lacked permanent funding or were expected to be abolished. In reviewing the propriety of a summary judgment motion, we cannot consider evidence or claims asserted after the motion court's ruling. The City was required to raise whatever issues it desired to introduce at or before the time of hearing in the trial court; it may not raise an issue, on appellate review of the propriety of the trial court's summary judgment, that was not plainly disclosed as a genuine issue in the trial court. *See Guerassio v. American Bankers Corp.*, 236 Md. 500, 505, 204 A.2d 568, 571 (1964); *Sodergren v. Johns Hopkins Univ. Applied Physics Lab.*, 138 Md.App. 686, 707–708, 773 A.2d 592, 605 (2001). Notwithstanding, the City's untimely Rule 36B argument, whether the positions lacked permanent funding or were expected to be abolished or to the contrary, remained budgeted positions after the assignment "in lieu," are factual issues arguably in dispute.

Rendering summary judgment inappropriate.

Even more critical to the outcome of the summary judgment motions was the lower court's erroneous legal interpretation and application of the "in lieu of" provision. Because the provision prohibits filling a "vacant position with an employee whose job class is in the same class series as the vacant

---

7. While noting that the City's claim regarding lack of money was both unsubstantiated and untimely, Ross responds that, to the contrary, the City Budget Sheets indicate that the City Planner Supervisor positions in question were already budgeted for the fiscal year after Ross was discharged and then rebudgeted for the fiscal year thereafter.

position and has a salary range which is higher than the budgeted position," the lower court interpreted this to mean that Ross did not qualify to fill the position "in lieu of." This is an incorrect application of the City policy.

 We have stated that "the cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). When presented with unambiguous statutory language, courts do not normally go beyond the text of the statute to determine legislative intent, *see Williams,* 359 Md. at 116, 753 A.2d at 49 (citations omitted). This does not signify, however, that the language should be read in isolation. Rather, statutory language should be read "in light of the full context in which [it] appear[s], and in light of external manifestations of intent or general purpose available through other evidence." *Stanford v. Maryland Police Training & Correctional Comm'n,* 346 Md. 374, 380, 697 A.2d 424, 427 (1997) (quoting *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989)).

Here, the City, by promulgating the "in lieu of" policy, certainly manifested its desire to establish a method by which junior employees could gain experience in a more senior position by assuming those responsibilities. *See* Baltimore City Administrative Manual, AM–231–1 (stating that such an assignment will "allow the individual to gain the necessary experience . . ."). The City benefits by maintaining full coverage of all positions and efficient operations within the division. The employee benefits by gaining the necessary experience and skills for future promotion; and, as was the case for Griffin, "in lieu of" employees also may receive the pay upgrade as well.[8] It seems perfectly logical then, that the

---

8. It is unclear whether all three City Planner Supervisors "in lieu of" received the pay upgrade. In pre-hearing depositions conducted on April 19, 1999, Mr. Leggs, when shown the Budget Sheet which had him listed as a City Planner Supervisor "in lieu," stated "That's my name, but I'm not a City Planner Supervisor," and continued, ". . . That appears to be a lot of incorrect information as to salary, as to grade."

very same provision which grants the City the ability to assign employees to higher positions also prohibits the City from assigning the duties of a junior employee position to a more senior employee. The converse of the example provided in the Administrative Manual[9] is that a Clerk position may not be filled with a Senior Clerk "in lieu of" a Clerk. It does not mean, as the lower court asserted, that a Senior Clerk could not serve "in lieu of" a Senior Clerk position, because the provision only prohibits "in lieu of" assignments of those with higher salary ranges than the budgeted position.

■ We agree with the Court of Special Appeals assessment of the "in lieu of" provision. Because the clause explicitly reads: "Any agency may *fill a vacant position* with an employee whose job class is not the same as the class of the vacant position . . . .," the provision indicates an intent to *fill* the vacancy, not merely delegate the responsibilities to a person while continuing to designate that position as vacant.

We further agree that the Civil Service Commission rules and the "in lieu of" clause can be read in harmony. As the Court of Special Appeals succinctly stated,

"[u]nder the Civil Service Commission rules, a person on the re-employment list for a vacant position takes absolute priority over all other applicants for that position. If a job is vacant and there are no names on the re-employment list for that position, the City may fill the vacant position by utilizing the 'in lieu of' clause set forth in the Administrative Policy Manual; but if, as in the case *sub judice,* an individual is at the top of the re-employment list for a vacant position and *if* the City elects to fill that vacant position,

---

When Ms. Feinberg was asked whether she received any bonus or extra pay for doing the duties of the City Planner Supervisor, she stated, "I don't recall."

When Ms. Griffin was asked whether she requested any out of title pay for performing the functions of a City Planner (deposition, April 19, 1999), she responded, "I didn't request. It was just . . . it was given."

**9.** The Baltimore City Administrative Manual 231–1 provides the following example: " . . . a Senior Clerk position may be filled with a Clerk "in lieu" of a Senior Clerk." *See also supra* note 5.

then the City must follow its Charter and Civil Service Commission rules and fill the vacancy by giving the most senior person on the re-employment list an absolute priority."

135 Md.App. at 382, 762 A.2d at 980 (emphasis in original).

The City claims that such an interpretation would severely limit the City's ability to utilize the "in lieu of" appointment as a way to save money while continuing to provide essential services. It is illogical, the City contends, to require the City to re-hire the same employees that were discharged for budgetary reasons, because the City would never be able to abolish a supervisory position. Notwithstanding the factual dispute this presents, i.e. whether a vacant City Planner Supervisor position remained independently budgeted, the City's argument is specious. The re-employment list does not guarantee the listed employee that he or she will be assigned to the very same position from which he or she was discharged; rather, the listed employee is guaranteed absolute priority for those positions which become vacant after the discharge and for which he or she is similarly qualified. For example, if there exist four Clerk positions (A, B, C, and D) and Clerk D is discharged because that position is going to be abolished for budgetary reasons, Clerk D would be placed on the re-employment list and given absolute priority for employment if position A, B, or C become vacant for other reasons. Contrary to the City's argument, simply because the Clerk who served in position D is rehired in one of the other positions does not mean that the City must rescind its abolition of position D. The City's concerns are unwarranted, and its argument, a red herring. Even if the City's arguments had merit, it would be an argument for revising the Charter and Civil Service Rules, and not an argument for disregarding the clear directives provided by the legislative and regulatory enactments governing this case.

We affirm the judgment of the Court of Special Appeals which reversed the trial court's grant of summary judgment for the City and remanded to that court for further proceedings.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*